No. 79–1964. ANDRUS, SECRETARY OF THE INTERIOR *v.* BAKER. C. A. 9th Cir. Certiorari denied.

JUSTICE BLACKMUN, with whom JUSTICE MARSHALL and JUSTICE POWELL join, dissenting.

The issue in this case is whether the Secretary of the Interior has applied an improper standard for determining that a mineral discovery is "valuable" under 30 U. S. C. § 22.[1] Because I believe that issue to be an important one deserving review here, and because the decision and judgment of the Court of Appeals may well thwart a proper attempt on the part of the Secretary to reject excessive mining claims while preserving the public's right to enjoy its lands, I dissent from the denial of certiorari.

In 1952, respondent began to mine cinders from a cone located within a volcanic field on public land near Flagstaff, Arizona. In 1965, he applied to the Bureau of Land Management of the Department of the Interior for a patent covering five 20-acre placer mining claims for cinders on land on which he claimed to have discovered "valuable mineral deposits." Respondent's claims covered an estimated 15 million tons of cinders. At the request of the Forest Service of the Depart-

---

[1] Section 22 reads:

"Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

ment of Agriculture, the Bureau issued an administrative contest complaint seeking cancellation of those claims.[2] Over the period from 1953 to 1976, respondent extracted and marketed less than one million tons; of this amount, a substantial portion was sold for purposes not cognizable under the mining laws. The Secretary considered these factors, along with the marginal profitability of the local cinders market, in concluding that respondent's total reserves far exceeded reasonable market demand for the foreseeable future. While validating two of respondent's claims, the Interior Board of Land Appeals nullified two others, reasoning that development of all four claims would be imprudent. 23 I. B. L. A. 319 (1976). Respondents sought judicial review in the United States District Court for the District of Arizona. On cross-motions for summary judgment, that court affirmed the agency's decision. The Court of Appeals, however, vacated and remanded, holding that the Secretary had exceeded his statutory powers in relying on an "excess reserves" analysis to limit the patentability of a mineral claim. 613 F. 2d 224 (CA9 1980).

Two complementary methods for determining whether a mineral deposit is of value have been developed over time. For many years, the "prudent person" test called for validation of mineral claims whenever extraction of the discovered deposits offered a "reasonable prospect of success" to a "person of ordinary prudence." *Castle* v. *Womble,* 19 L. D. 455, 457 (1894). This Court approved that test on numerous occasions, most recently in *Andrus* v. *Charlestone Stone Products Co.,* 436 U. S. 604 (1978). As a refinement on what at times perhaps appeared to be an imprecise standard, the Secretary came to require an applicant to show that his claimed deposit could be extracted and marketed at a profit. In *United States* v. *Coleman,* 390 U. S. 599, 603 (1968), this Court reversed a Court of Appeals' conclusion to the effect that the

---

[2] The Bureau later dismissed its complaint as to one of the claims.

marketability standard was "different and more onerous" than the prudent person test. The Court viewed the modification as "an admirable effort to identify with greater precision and objectivity the factors relevant to a determination that a mineral deposit is 'valuable'." *Id.*, at 602.

I believe that, as in *Coleman*, the Court of Appeals may have unduly restrained the Secretary's authority to evaluate claims of mineral discoveries on public lands; its ruling appears to be based on the perception, possibly a misperception, that the Secretary's "excess reserves" analysis does violence to the statute. In light of that ruling, one now may expect the assertion of additional claims involving "valuable" mineral deposits not marketable in the foreseeable future. This can, and probably will, result in the withdrawal of vast acreage from the public domain for purposes unrelated to mining. Even if Congress later acts to implement the "excess reserves" concept, a prospect at best uncertain, such prospective legislation might not return to the public trust those claims already perfected pursuant to the Court of Appeals' ruling. See *Best* v. *Humboldt Placer Mining Co.*, 371 U. S. 334, 335–336 (1963).

The case thus raises a substantial question regarding administration of public lands, and surely is arguably in conflict with the rationale of *United States* v. *Coleman*. I therefore would grant certiorari and have the issue resolved only after plenary consideration.