Jose Manuel OLIVARES and Balbina
Peraza Olivares, Petitioners,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 81–7254.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1982.

Decided Sept. 1, 1982.

Stuart I. Folinsky, Jonesi & Folinsky, Los
Angeles, Cal., for petitioners.

Peter R. Osinoff, Asst. U. S. Atty., Los
Angeles, Cal. (argued), for respondent;
Dzintra I. Janavs, Asst. U. S. Atty., Los
Angeles, Cal., on brief.

Before POOLE and BOOCHEVER, Cir-
cuit Judges, and PFAELZER*, District
Judge.

POOLE, Circuit Judge:

Balbina Olivares (Olivares) petitions un-
der 8 U.S.C. § 1105a(a) for review of the
decision of the Board of Immigration Ap-
peals (BIA) affirming an order of deporta-
tion against her and her husband.[1] She
contends that the immigration judge erred
in denying her application for an adjust-
ment of status under section 245 of the
Immigration and Naturalization Act (the
Act), 8 U.S.C. § 1255(a). We affirm.

FACTS

On October 12, 1979, Olivares and her
husband, both natives and citizens of Mexi-
co, were charged with violation of 8 U.S.C.
§ 1251(a)(2): Olivares for overstaying her
non-immigrant visit and her husband for
entering the United States without inspec-
tion. At their deportation hearing on No-
vember 21, 1979, both admitted deportabili-
ty under § 1251(a) and requested voluntary
departure. In addition, Olivares applied for

---

* Honorable Mariana R. Pfaelzer, United States
District Judge for the Central District of Cali-
fornia, sitting by designation.

1. Although both Mr. and Mrs. Olivares are des-
ignated as petitioners, this petition for review
pertains only to Mrs. Olivares, as did the ap-
peal before the BIA.

a discretionary adjustment of status to that of a lawfully admitted permanent resident, as provided in 8 U.S.C. § 1255,[2] based on a fifth-preference visa petition filed in her behalf by her sister, a citizen of the United States, and approved by the Immigration and Naturalization Service. *See* 8 C.F.R. § 204.1 (1981). Her priority date for purposes of receiving an immigrant visa was October 27, 1978, the date the visa petition was filed.[3]

To qualify for an adjustment of status, Olivares was required to show that an immigrant visa was immediately available to her. 8 U.S.C. § 1255(a)(3). In accordance with 8 C.F.R. § 245.1(g)(1),[4] the immigration judge consulted the most recent Department of State Visa Office Bulletin on Availability of Immigrant Visa Numbers, which indicated that no visas were then available to fifth-preference Mexican applicants. The immigration judge thus denied Olivares's application on the ground of statutory ineligibility. Consequently, he found both Olivares and her husband deportable and granted them a three month period for voluntary departure. Olivares's appeal was dismissed by the BIA, and this petition for review followed. We have jurisdiction under 8 U.S.C. § 1105a(a).[5]

2. 8 U.S.C. § 1255(a) provides that:
"The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."
Because Olivares had been served with an order to show cause, her application for adjustment of status was required to be made and considered at her deportation hearing. 8 C.F.R. § 245.2(a) (1981).

3. Since demand for immigrant visas normally exceeds availability, applicants are assigned priority dates and placed on a waiting list. An immigrant visa is considered "available" under 8 U.S.C. § 1255(a) when the applicant has a priority date on the waiting list that is no later than the date shown in the Department of State Visa Office Bulletin on Availability of Immigrant Visa Numbers. 8 C.F.R. § 245.1(g)(1) (1981). The priority date of an applicant seeking an immigrant visa under a fifth-preference visa petition is the date on which the petition was filed. 8 C.F.R. § 245.1(g)(2).

4. 8 C.F.R. § 245.1(g)(1) reads in pertinent part:
(1) *Availability of immigrant visas under section 245.* An alien is ineligible for the benefits of section 245 of the Act unless an immigrant visa is immediately available to him at the time the application is filed. If the applicant is a preference or nonpreference alien, the current Department of State Visa Office Bulletin on Availability of Immigrant Visa Numbers will be consulted to determine whether an immigrant visa is immediately available. An immigrant visa is considered available for accepting and processing the application Form I-485 if the preference or nonpreference category applicant has a priority date on the waiting list which is no later than the date shown in the Bulletin or the Bulletin shows that numbers for visa applicants in his category are current.

5. The INS argues that, while we have jurisdiction under § 1105a(a) to review the immigration judge's denial of Olivares's application for adjustment of status, the scope of our review is limited to whether the judge acted correctly in relying on the Visa Office Bulletin. According to the INS, neither the immigration judge nor the BIA had the authority to question the validity of the State Department's visa allocations. Thus, the agency argues that consideration of the central issue raised on this appeal, i.e., whether the State Department was correct in deciding to allocate visas to Mexico in FY 1979 pursuant to 8 U.S.C. § 1153(a) rather than § 1152(e), is outside the scope of our review. We disagree.

Olivares's application for adjustment of status was denied because it was determined that no visa numbers were immediately available to fifth-preference Mexican applicants such as herself. No visa numbers were immediately available because allocation for FY 1979 was made pursuant to § 1153(a) rather than § 1152(e). Our power under § 1105a(a) to review the propriety of the denial of her application for adjustment of status necessarily includes power to review the propriety of the underlying determinations upon which that denial was based.

Nor do we agree with the INS that the Secretary of State is an indispensable party to this appeal. If we find in favor of Olivares, we may grant full relief by vacating the order of deportation and remanding to the immigration judge with instructions to determine whether an immigrant visa number would have been available to Olivares at the time of her original application had visa distribution to Mexico in FY

## DISCUSSION

Olivares contends that the Visa Office Bulletin was "clearly wrong" in indicating that no visas were available to fifth-preference Mexican applicants at the date of her hearing, and that the immigration judge therefore abused his discretion in denying her application on that basis. According to Olivares, visa distribution to Mexico in FY 1979 should have been made pursuant to 8 U.S.C. § 1152(e) which would have required the State Department to make visas available to fifth-preference Mexican applicants. We disagree.

The allocation of immigrant visas, both worldwide and within an individual country is governed by 8 U.S.C. §§ 1151–1156. The maximum number of visas to be issued worldwide in any one fiscal year is set by 8 U.S.C. § 1151(a). For example, in FY 1979, the worldwide quota was set at 290,000.[6] These visas are distributed among eight preference categories of applicants by fixed percentages set forth in 8 U.S.C. § 1153(a), each category being based on some factor such as familial relationship with a United States citizen, professional skill, or refugee status.[7] Thus, 20 percent of the worldwide quota is reserved for first-preference applicants, 26 percent for second-preference applicants, 10 percent for third, fourth and sixth-preference applicants respectively, and 24 percent for fifth-preference applicants. See 8 U.S.C. § 1153(a). In FY 1979, therefore, the State Department was required to make available worldwide 58,000 visas to first-preference applicants, 75,400 to second-preference applicants, and so on until the quota of 290,000 was filled.

The maximum number of visas that can be made available in a fiscal year to the citizens of any one country is 20,000. 8 U.S.C. § 1152(a). Within that overall limitation, however, there is no restriction as to the number of visas that can be allocated to

any one preference category within a single country. Rather, a country's entire allotment of 20,000 visas can be distributed to applicants from the highest preference categories if the worldwide demand in these categories is light. As a result, in countries such as Mexico where the demand is heavy in the higher preference categories, there often are no visas available for applicants in the lower categories.

In order to alleviate this disparity, 8 U.S.C. § 1152(e) provides that "[w]henever the maximum number of visas have been made available under this section to natives of any single foreign state ... in any fiscal year," in the following fiscal year that country's allotment of 20,000 visas is to be distributed by percentage allocation among seven preference categories that correspond to those in 8 U.S.C. § 1153(a). Thus, when § 1152(e) applies to a particular country, only 20 percent (4,000) of the visas alloted to that country may be issued to first-preference applicants, 26 percent (5,200) to second-preference applicants, 10 percent (2,000) to third, fourth and sixth-preference applicants respectively, and 24 percent (4,800) to fifth-preference applicants. By thus restricting the number of visas that may be issued to the higher preference applicants with the individual country, § 1152(e) assures visa availability to lower preference applicants.

The State Department and the Immigration and Naturalization Service have consistently interpreted the term "maximum number of visas" as used in § 1152(e) to refer to the individual country's maximum annual allotment of 20,000 visas. Under this interpretation, distribution of visas in a country is governed by § 1152(e) only when the statutory maximum of 20,000 visas was made available to that country in the preceding fiscal year. Since 20,000 visas were not made available to Mexico in FY 1978,

---

1979 been governed by § 1152(e). While it may be that the immigration judge had no discretion to look beyond the Visa Office Bulletin in the first instance, we are confident that, if ordered by this court, he could conduct the necessary investigation.

**6.** At present, the worldwide quota is set at 270,000. See 8 U.S.C. § 1151(a).

**7.** The fifth-preference category, under which Olivares sought a visa, consists of the brothers and sisters of United States citizens over the age of twenty-one.

visa distribution to Mexico in FY 1979 was not governed by § 1152(e).

Olivares contends that the State Department's interpretation of § 1152(e) is clearly wrong. She argues that the maximum number of visas "are made available" to a country within the meaning of that section whenever the demand for visas in that country exceeds the number of visas that are in fact made available to that country in a fiscal year, even if that number is less than 20,000. According to this argument, since demand in Mexico in FY 1978 was greater than the number of visas in fact made available, the State Department was required in FY 1979 to distribute visas under § 1152(e).

 This identical issue was addressed recently in *Angco v. Haig*, 514 F.Supp. 1328 (E.D.Pa.1981), which upheld the State Department's interpretation of § 1152(e). The court first noted that judicial review of this issue is a narrow one. *Id.* at 1333–34. The interpretation of a statute by the agency or department charged with its administration is entitled to great deference and should be accepted unless demonstrably irrational or clearly contrary to the plain and sensible meaning of the statute. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 796, 63 L.Ed.2d 22 (1980); *Horizon Mutual Savings Bank v. Federal Savings & Loan Insurance Corp.*, 674 F.2d 1312, 1316 (9th Cir. 1982). Applying this standard, the court thoroughly reviewed the language, legislative history and underlying purpose of § 1152(e), and concluded that the State Department's interpretation was fully consistent with all three and was thus a reasonable construction of the statute. *Angco v. Haig, supra*, 514 F.Supp. at 1334–35. We find the court's analysis persuasive and agree with its conclusion.

First, the State Department's interpretation is fully consistent with the language of § 1152(e). By its express terms, § 1152(e) is invoked "[w]henever the maximum number of visas have been made available *under*

this section to natives of any single foreign state ... in any fiscal year." 8 U.S.C. § 1152(e) (emphasis added). The phrase "under this section" obviously refers to § 1152,[8] and the maximum number of visas to be made available under § 1152 to the citizens of any one country in a fiscal year is 20,000. 8 U.S.C. § 1152(a). Thus, the language of § 1152(e) clearly supports the incorporation of the statutory maximum of 20,000 set out in § 1152(a).

Second, the legislative history of § 1152(e), although quite sparse, indicates that Congress intended the application of that section to be triggered when a country had used its full quota of 20,000 visas in the preceding fiscal year. The House Report recommending passage of the amendments which enacted § 1152(e) stated:

> The section also adds a new Section 202(e) which provides that whenever the maximum number of visas or conditional entries has been made available to natives of a foreign state (20,000) or dependent area (600) in any fiscal year, in the following fiscal year visas or conditional entries will be made available and allocated to that foreign state or dependent area according to the priorities and percentages set forth in the preference system, as modified by this legislation.

H.R.Rep.No. 94–1553, 94th Cong., 2d Sess. 14, *reprinted in* [1976] U.S.Cong. & Adm. News 6073, 6085–86. Moreover, the chairman of the House Subcommittee on Immigration, Citizenship and International Law described the operation of proposed section 202(e) to the full House as follows:

> [T]he bill would propose a formula which would provide that visas be distributed throughout the preference categories in those cases where a country has reached its 20,000 limit for visa issuance.

122 Cong.Rec. 33633 (1976). Olivares has not cited to any legislative history evidencing a contrary intent, and we have found none.

---

**8.** We note that, as enacted, § 202(e) of the Immigration and Nationality Act Amendments of 1976, Pub.L.94–571, § 3(3), 90 Stat. 2704

(1976), used the phrase "under Section 202" instead of "under this section" as appears in 8 U.S.C. § 1152(e).

Finally, we cannot say that the State Department's interpretation so clearly disserves the purpose underlying § 1152(e) as to be demonstrably irrational. As stated by the court in *Angco*:

> By tying the applicability of section 202(e) into a country's reaching its annual allotment of 20,000 visas, Congress sought to assure that the ameliorative provisions of that statute will normally control visa distribution in those countries most in need of them, i.e., those in which the number of visas annually made available reaches the statutory maximum. For me to adopt the plaintiffs' [proffered] interpretation simply because it arguably better furthers these purposes would be tantamount to an amendment of the statute.

514 F.Supp. at 1335–36. Moreover, it is open to question whether Olivares's interpretation would better serve the objectives of § 1152(e). Were we to accept her interpretation, distribution of visas to chronically over-subscribed countries such as Mexico would be controlled by § 1152(e) every year, since the demand would almost invariably exceed availability. We do not believe that Congress intended such a result.

CONCLUSION

We conclude that the interpretation of § 1152(e) adopted by the State Department and the INS is a reasonable one and thus valid. Accordingly, the immigration judge did not err in denying Olivares's application for adjustment of status on the basis of the Visa Office Bulletin. The order of deportation is therefore AFFIRMED.