Stuart Grant RAMSTAD,
Plaintiff-Appellant,

v.

Donald HODEL,* The Secretary of the Interior of the United States; Board of Land Appeals: Gail M. Frazier, Edward W. Stuebing and James L. Burski, members of the Interior Board of Land Appeals; Robert F. Burford, Director of Bureau of Land Management of the United States Department of the Interior; Curtis V. McVee, State Director for Alaska Bureau of Land Management United States Department of Interior, Defendants-Appellees.

No. 82–3605.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 18, 1983.

Decided April 2, 1985.

* Donald Hodel has been substituted for James G.　Watt, Fed.R.App.P. 43(c).

**1380**

Eugene F. Wiles, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, Alaska, for plaintiff-appellant.

J. Carol Williams, Washington, D.C., for defendants-appellees.

Before CANBY, BOOCHEVER and NORRIS, Circuit Judges.

CANBY, Circuit Judge:

Plaintiff Ramstad brought this action to review a decision of the Interior Board of Land Appeals denying his application to purchase land in Alaska upon which Ramstad operated a hunting and fishing camp and guide service. The district court granted summary judgment [1] in favor of the government defendants, and Ramstad appeals. We disagree in part with the ruling of the district court, and reverse the judgment.

## FACTS

For purposes of their motion for summary judgment, the defendants accepted as true the allegations of the complaint. The facts, therefore, are not in material dispute for purposes of this appeal.

On December 25, 1962, Ramstad staked out eighty (80) acres of public land as a trade and manufacturing site pursuant to the Trade and Manufacturing Site Act, 43 U.S.C. § 687a, *repealed* effective Oct. 21, 1986, Pub.L. 94–579, Title VII, § 703(a) (1976). That Act permitted the purchase of up to eighty (80) acres of such land "upon submission of proof that said area embraces improvements of the claimant and is needed in the prosecution of such trade, manufacture, or other productive industry." *Id.* Ramstad subsequently operated a hunting and fishing camp and guide service on the site and over a period of time made improvements exceeding $200,000 in value.

On April 15, 1967, Ramstad attempted to file a notice of location, pursuant to 43 U.S.C. § 687a–1, *repealed* effective Oct. 21, 1986, Pub.L. 94–579, Title VII, § 703(a) (1976), and 43 C.F.R. § 2562.1 (1983). That statute, which the regulation tracks, provides that claimants of trade and manufacturing sites and homestead or headquarters sites under § 687a:

... shall file a notice describing such claim ... in the United States land office

---

1. The defendants submitted a motion for judgment on the pleadings which the district court treated as a motion for summary judgment. Fed.R.Civ.P. 12(c).

for the district in which the land is situated within ninety days from April 29, 1950 or within ninety days from the date of the initiation of the claim, whichever is later. Unless such notice is filed ... within the time prescribed the claimant shall not be given credit for the occupancy maintained in the claim prior to the filing of (1) a notice of the claim ... or (2) an application to purchase, whichever is earlier. Application to purchase claims ... must be filed within five years after the filing of the notice of claim under this section.

43 U.S.C. § 687a–1 (1976).[2] Ramstad's notice of location was not accepted at the office of the Bureau of Land Management ("BLM") because the desired land had been classified for multiple use and consequently had been withdrawn from all forms of public appropriation on March 8, 1967, thirty-eight days before Ramstad attempted to file his notice. 32 Fed.Reg. 3838 (March 8, 1967); Multiple Use Classification AA–818, 32 Fed.Reg. 14971 (Oct. 27, 1967). The withdrawal contained an express exception for "valid existing rights." 32 Fed.Reg. at 3838.

On December 14, 1968, the BLM office notified Ramstad that he must cease use of the land and remove all improvements. After a meeting in which Ramstad explained to BLM personnel that he had occupied the land and made improvements prior to the withdrawal, the BLM vacated its December 4, 1968 request that he remove the improvements and asked Ramstad to submit evidence to document his commercial use prior to March 8, 1967.

In January 1969, Ramstad again visited the BLM office and was once again advised that he would not be permitted to file his trade and manufacturing site location notice because the lands had been withdrawn from entry. On February 24, 1969, however, the BLM sent a letter to Ramstad referring to its previous agreement to vacate its request that Ramstad remove improvements and stating that it still had not received data from Ramstad substantiating his commercial use prior to March 8, 1967. The letter gave Ramstad 30 days to provide such evidence or face legal action to remove the improvements. In several visits to the BLM office thereafter, however, Ramstad was advised that his notice would not be accepted for filing, and he did not provide the substantiating evidence as requested in the February 24, 1969, BLM letter.

On September 23, 1974, the BLM served Ramstad with a notice of trespass. Ramstad made several more visits to the BLM office. In early 1979 he was advised by BLM personnel to submit an application to purchase and to request an equitable adjudication of his claim. He did so.

The BLM denied Ramstad's application, relying on departmental regulation 43 C.F.R. § 2562.3(d)(2) (1983).[3] The BLM reasoned that because the land had been withdrawn first in 1967 and then again in 1971 by the Alaska Native Claims Settlement Act, 43 U.S.C. § 1610 (1982), the land was not "unoccupied, unimproved, and unappropriated by any [other] person" as

**2.** The Interior Department implementing regulation states:

(a) Any qualified person ... initiating a claim on or after April 29, 1950, under section 10 of the act of May 14, 1898, by the occupation of vacant and unreserved public land in Alaska for the purposes of trade, manufacture, or other productive industry, must file notice of the claim ... in the proper office ... within 90 days after such initiation. Where on April 29, 1950, such a claim was held by a qualified person ... the claimant must file notice of the claim in the proper office, within 90 days from that date.

(c) ... Unless a notice of the claim is filed within the time prescribed in paragraph (a) of

this section no credit shall be given for occupancy of the site prior to filing of notice in the proper office, or application to purchase, whichever is earlier.

43 C.F.R. § 2562.1 (1983).

**3.** The pertinent part of the regulations requires: "(2) That no portion of the land is occupied or reserved for any purpose by the United States or occupied or claimed by natives of Alaska; that the land is unoccupied, unimproved, and unappropriated by any person claiming the same other than the applicant." 43 C.F.R. § 2562.-3(d)(2) (1983).

the regulation required in order for the land to be subject to location. Although the 1967 and 1971 withdrawals were both subject to "valid existing rights," the BLM ruled that Ramstad's use and improvement of the site did not create a valid existing right because he had not filed a notice of location or application to purchase until March 1, 1979. *See* 43 U.S.C. § 687a–1. At that time, the land had been withdrawn and Cook Inlet Region, Inc. had filed a selection application for it pursuant to the Alaska Native Claims Settlement Act. The BLM also denied Ramstad's request for equitable adjudication on the ground that he had not shown substantial compliance with the law as required by 43 C.F.R. § 1871.1–1 (1983).[4]

Ramstad appealed to the Interior Board of Land Appeals, which affirmed the BLM's decision. The Board reasoned that 43 U.S.C. § 687a–1 requires claimants to file a notice of location within ninety days of initiating their claims or lose credit for occupancy maintained prior to filing. The Board found that Ramstad had filed more than ninety days after initiating occupancy. His entry date therefore became his filing date. Because that date fell after the withdrawal, Ramstad had no valid existing right at the time of withdrawal. Even if Ramstad had filed a notice of location when he first attempted to do so in April 1967, the same result would have followed: he had been in occupancy more than ninety days and his entry date would then have been April 15, 1967, after the land had been

withdrawn. The Board also denied equitable adjudication on the ground that there had been no substantial compliance with the law.

The district court held that the Board had not acted arbitrarily, capriciously or contrary to law. It accordingly rendered summary judgment for the federal defendants.

## DISCUSSION

### 1. *Standard of Review*

The district court was bound to uphold the determination of the Board unless it was arbitrary, capricious, an abuse of discretion, or not in accordance with law. 5 U.S.C. § 706(2)(A) (1982). "[G]reat deference is shown to an administrative agency's interpretation of the law which it is charged with administering." *Baker v. United States*, 613 F.2d 224, 226 (9th Cir.), *cert. denied*, 449 U.S. 932, 101 S.Ct. 332, 66 L.Ed.2d 157 (1980). We review *de novo*, however, the district court's decision applying these standards, because the district court is in no better position to review the administrative record than is this court. *Asarco, Inc. v. United States Environmental Protection Agency*, 616 F.2d 1153, 1161 (9th Cir.1980).

### 2. *Ramstad's Legal Claim of Right to Purchase*

▮ The interpretation of 43 U.S.C. § 687a–1 which the Board adopted is ra-

---

**4.** The regulation states:

The cases subject to equitable adjudication by the Director, Bureau of Land Management, cover the following: (a) Substantial compliance: All classes of entries in connection with which the law has been substantially complied with and legal notice given, but the necessary citizenship status not acquired, sufficient proof not submitted, or full compliance with law not effected within the period authorized by law, or where the final proof testimony, or affidavits of the entryman or claimant were executed before an officer duly authorized to administer oaths but outside the county or land district, in which the land is situated, and special cases deemed proper by the Director, Bureau of Land Management, where the error or informality is satisfactorily

explained as being the result of ignorance, mistake, or some obstacle over which the party had no control, or any other sufficient reason not indicating bad faith there being no lawful adverse claim.

The regulation is issued pursuant to 43 U.S.C. § 1161 (1982), which provides:

The Secretary of the Interior, or such officer as he may designate, is authorized to decide upon principles of equity and justice, as recognized in courts of equity, and in accordance with regulations to be approved by the Secretary of the Interior, consistently with such principles, all cases of suspended entries of public lands and of suspended preemption land claims, and to adjudge in what cases patents shall issue upon the same.

tional and not arbitrary. Section 687a–1 provides that a notice of location must be filed within 90 days of the initiation of a claim. There is no dispute that Ramstad entered and staked eighty acres as a trade and manufacturing site in 1962, and his complaint so alleges. He did not attempt to file a notice of location until April 1967. Section 687a–1 states that unless notice is filed within the prescribed 90 days after initiation of the claim, no credit for occupancy[5] can be granted prior to filing of the notice of location or application to purchase, whichever first occurs. The Board gave effect to the plain meaning of these provisions in ruling that the statute did not allow Ramstad credit for occupying his site prior to April 1967 at the earliest. Since the land had been withdrawn from settlement in March 1967, 32 Fed.Reg. 3838 (March 8, 1967), Ramstad was not legally entitled to perfect his claim. The Board did not err in ruling that the statutory scheme provided no compelling legal basis to establish Ramstad's claim as a "valid existing right" excepted from the withdrawal.

Ramstad's claim of legal right to purchase does not fall within the rule of *James Milton Cann*, 16 I.B.L.A. 374 (1974), which applies only where the occupancy of the claimed land *began* less than 90 days before withdrawal. In denying Ramstad's petition for reconsideration, the Board overruled *Edwin William Seiler*, 20 I.B.L.A. 221 (1975) (on reconsideration), to the extent that it may have extended the *Cann* rule to situations where occupancy began more than 90 days prior to withdrawal. The Board may overrule its own cases as long as it explains its reasons. *Atchison, Topeka & Santa Fe R. Co. v. Wichita Board of Trade*, 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973).

The *Cann* rule and the denial of Ramstad's claim do not create an unconstitutional capricious distinction between claim-ants who begin occupancy within 90 days of a withdrawal and those who begin occupancy earlier. Both classes receive full credit for occupancy from its inception if they file notices of location within 90 days, as section 687a–1 requires.

We conclude, therefore, that the district court was correct in upholding the Board's determination that Ramstad was not entitled, as a matter of law, to purchase the land.

### 3. *Ramstad's Entitlement to Equitable Adjudication*

While the Board's determination that Ramstad had not fully complied with section 687a–1 is supportable under our standard of review, its conclusion that he had not "substantially complied," and was accordingly ineligible for equitable adjudication, was so unnecessarily strict as to be arbitrary.

 It is not disputed on this appeal that Ramstad entered the land long ago, when it was vacant and open to location, that he occupied and improved it as a site for his trade, and that he has invested large amounts of his time and resources in the location. No question has been raised of his good faith.

Ramstad attempted to file his notice of location thirty-eight days after the first withdrawal. Even under the Board's interpretation of section 687a–1, Ramstad's filing on April 15, 1967, would have been sufficient to exempt him from the withdrawal if he had first entered and improved the land in February 1967. *James Milton Cann*, 16 I.B.L.A. 374 (1974). Similarly, if Ramstad had abandoned his improved site in January 1967 and had reclaimed it in February (perhaps making some small improvement), he presumably would have been able to file his notice of location in April 1967 and would have been credited with a "valid existing right," exempt from

---

**5.** Under 43 U.S.C. § 687a, a claimant of a trade and manufacturing site must be "occupying" it in order to purchase it, but no particular period of occupancy is required. The same statute requires three years occupancy of at least five months each year for a claimant to purchase a homestead or headquarters site. It is with regard to such claims that the "credit" for occupancy referred to in section 687a–1 has the most relevance.

withdrawal, as of February 1967. Yet because Ramstad had been on the land longer and without interruption, he loses everything and the Board holds him to be beyond the scope of equitable relief afforded by 43 U.S.C. § 1161 and 43 C.F.R. § 1871.1–1.

Ramstad understandably contends that he should be allowed to "waive" his earlier occupancy and claim only that which occurred within 90 days prior to his attempted filing of April 1967. The Board did not read section 687a–1 to entitle Ramstad to such a waiver, and, as we have already held, the Board's interpretation of the statute is a permissible one. It is not, however, the *only* permissible one. It is quite possible for a decision-maker applying equitable principles to read the statute to permit Ramstad to waive the early portions of his occupancy and initiate his claim 90 days prior to April 15, 1967. If equitable adjudication were to result in such a ruling in Ramstad's favor, it would do no violence to the thrust and purposes of section 687a–1. That statute in terms requires only that a notice of location be filed within 90 days of "initiation of the claim," in order for the claimant to receive credit for occupancy from the date of initiation. There is nothing in the language of section 687a–1 that requires the "initiation of the claim" to occur at the moment the claimant first sets foot on and improves the land. "It is a matter of common knowledge that many go on the public domain, build cabins and establish themselves, temporarily at least, as occupants, but having in view simply prospecting for minerals, hunting, trapping, etc., and with no thought of acquiring title to land." *Tarpey v. Madsen*, 178 U.S. 215, 221, 20 S.Ct. 849, 851, 44 L.Ed. 1042 (1900). Where *no rights of competing claimants* are affected, it does not defeat the purposes of section 687a–1 to grant equitable relief that effectively allows a claimant to "initiate" a claim some time after having entered and made improvements, in order to avoid the effects of a withdrawal of his site from the public domain.

Nor would such equitable relief be inconsistent with the statutory purposes reflected in the legislative history of section 687a–1. That section was enacted in 1950 to impose its filing requirement on section 687a, which was originally passed in 1898, and was amended several times thereafter. The 1950 bill was submitted by the Department of Interior to the House of Representatives and was passed with no significant changes. The purpose of the statute, according to the Department, was to require recordation so that prospective settlers on the public lands could obtain information on the available lands from the proper office. 1950 U.S.Code Cong. & Admin.News 2196. This purpose was not fully accomplished. Because the statute permits a 90 day relation back, the absence of a notice does not invariably assure the prospective settler that the land is available. On the other hand, the mere filing of a notice does not establish the validity of a claim; only occupation and improvement do that. *Vernard E. Jones*, 76 I.D. 133 (1969). The presence of a notice on file consequently does not assure the prospective settler that the land is unavailable. "The only way another person desirous of obtaining the same land can assure himself that the land is or is not open to other appropriation is to inspect the land and judge for himself whether the 'locator' has established any right by occupying and improving it." *Margaret L. Klatt*, 23 I.B. L.A. 59, 64 (1975). In any event, whether the benefits of section 687a–1 to prospective settlers were great or small, they are unaffected by equitable relief that would permit a claimant in Ramstad's position to file a notice of location within 90 days after a withdrawal even though his original entry was effected long before that time.

Precedent exists for treating the effects of late filing differently for purposes of withdrawal than for those of competing adverse claimants. In *James Morris*, 47 I.D. 326 (1920), a homestead claimant was protected from a withdrawal even though he had failed to file a record of claim within the required three months. The withdrawal was differentiated from an adverse claim, which could have prevailed over the

homesteader because of his lack of timely filing.

While a settler may lose his preference, over other settlers, by failure to comply with the requirements of the act of May 14, 1880, ... his right to the land acquired by settlement thereon, was not created by that act but has been recognized by this Department and the courts from the beginning of the government.

*Id.* at 328 (quoting *Moore v. Northern Pacific Ry. Co.*, 43 L.D. 173, 1974). We readily concede that, as the appellees and the Board noted, *James Morris* dealt with different statutes and withdrawal orders. *Morris* does, however, support the view that a withdrawal order need not stand on the same footing as a competing third party claim with regard to filing requirements.

Indeed, an expansive interpretation of "existing valid rights" in the context of a withdrawal is found in an Opinion of the Solicitor of the Department of Interior, 55 Int.Dec. 205, 210–11 (1935):

It is hardly practicable to give a precise and general definition of the meaning of "existing valid rights," as used in the saving clause of the said Executive Order. The circumstances of each particular case will have to be considered in applying that provision.... In the case of *Williams v. Brening* (51 L.D. 225), it was said that these withdrawals were designed to prevent the initiation of new claims and not the destruction of rights theretofore fairly earned....

Of course all valid entries are protected, and I believe also that all prior valid applications for entry, selection, or location, which were substantially complete at the date of the withdrawal should be considered as constituting valid existing rights within the meaning of the saving clause of the withdrawal order.... I believe this protective provision should be generously applied. The public interest in particular tracts within the confines of the broad expanse thus withdrawn is too inconsequential to justify the striking down of individual rights through technical construction or harsh

application of the protective provision of the order.

*See also* 55 Int.Dec. 226 (1935). These considerations are clearly appropriate for application in an equitable adjudication.

We realize that the Board has adhered in a number of decisions to the view that where no notice of location was filed within 90 days of entry, and neither a notice of location or application to purchase is filed before withdrawal, a withdrawal leaves the occupant with no "valid existing right." The leading decision of the Board appears to be *Kennecott Copper Corp.*, 8 I.B.L.A. 21 (1972). The rule of *Kennecott* has been reiterated in several subsequent decisions. *E.g., William G. Fairbanks*, 22 I.B.L.A. 255 (1975); *Knute P. Lind*, 21 I.B.L.A. 81 (1975); *Rene P. Lamoureux*, 20 I.B.L.A. 243 (1975); *Gary Lee Slay*, 18 I.B.L.A. 345 (1975); *Eugene M. Witt*, 15 I.B.L.A. 378 (1974); *Ralph Edmund Marshall*, 14 I.B. L.A. 233 (1974). In those cases, however, the claimants were advancing an extreme proposition: that occupation and improvement prior to withdrawal created a "valid existing right" regardless of how much later the notice of location or application to purchase was filed. That position was inconsistent with *Russian-American Packing Co. v. United States*, 199 U.S. 570, 575, 26 S.Ct. 157, 158, 5 L.Ed. 314 (1905), where the Supreme Court stated that "the mere settlement upon public lands without taking some steps required by law to initiate the settler's right thereto, is wholly inoperative against the United States." To accept the claimants arguments in the *Kennecott* line of cases would have rendered the 90 day notice provision of section 687a–1 wholly inoperative. Thus in *Kennecott*, the Board rejected the claim of *Kennecott*, which had never filed a notice of location and had filed an application to purchase a year and a half after withdrawal. The Board pointed out that the purpose of section 687a–1 of providing the Department with information concerning claims to public lands "would not be met if a claimant could present his application to purchase long after a withdrawal had been in effect by claiming his occupancy precluded the

withdrawal from being effective even though he gave no notice to the Bureau, as required." 8 I.B.L.A. at 28–29. Similarly, all of the cases cited above that follow and rely upon *Kennecott,* except *Slay,* involved attempts to file notices or applications to purchase many months or years after withdrawal.

To permit equitable adjudication in the circumstances of Ramstad's case, by permitting a "waiver" of early occupancy, involves no such opportunity for the recognition of stale claims. Nor does it negate all effectiveness of section 687a–1 by recognizing what amounts to a "valid existing right" merely by occupancy and improvement. Instead, a grant of equitable relief would simply permit a claimant who in good faith has occupied and improved the land to ignore the earliest period of his occupancy and improvement, for purposes of bringing his claim within the "valid existing rights" exception to a withdrawal. It would follow from tying such relief to section 687a–1 that notices of location filed more than 90 days after a withdrawal would not entitle a claimant to equitable relief excepting the claimed land from a withdrawal.

We are not unmindful of decisions of the Board to the effect that equitable adjudication is inappropriate when the notice of location was belatedly filed. *E.g., Knute P. Lind,* 21 I.B.L.A. 81, 84 (1975); *Rene P. Lamoureux,* 20 I.D. 243, 246 n. 1 (1969). In Ramstad's case, however, the notice of location may be "deemed" to have been filed at the time of Ramstad's attempted filing on April 15, 1967. *James Milton Cann,* 16 I.B.L.A. 374, 377 (1974). It is consistent with the intent and operation of section 687a–1 equitably to regard Ramstad as having initiated his claim within 90 days prior to that date. To deny him all eligibility for equitable adjudication under the circumstances of this case would defeat the broad remedial purpose of 43 U.S.C. § 1161, which authorizes the Secretary or his delegate to decide such cases "upon principles of equity and justice."

Appellees argue that Ramstad's application to purchase is clearly untimely and not in substantial compliance with the law because it was filed some twelve years after his attempted filing of his notice of location. Section 687a–1 requires filing within five years. Ramstad, however, can hardly be held to the statutory requirement of filing within five years "after the filing" of the notice of location when his attempted filing of that notice was refused by the Bureau and he was continually informed that the land was no longer locatable. Nor is equitable adjudication precluded by passage of the statutory period for filing an application to purchase. *C. Rick Houston,* 5 I.B.L.A. 71, 75 (1972).

Appellees also contend that Ramstad is precluded from an equitable adjudication because Cook Inlet Region, Inc., has filed an application for selection of the land pursuant to the Alaska Native Claims Settlement Act, under which the land was withdrawn in 1971. Appellees rely on the requirement of 43 C.F.R. § 1871.1–1 that there be "no lawful adverse claim." We cannot, however, read the regulation as precluding equitable adjudication merely because of the existence of the selection application. The 1971 withdrawal for Alaska Native claims, like the 1967 forest withdrawal, included an exception for "valid existing rights." It is consistent with the purpose of those exceptions to include within them claims perfectable, by means of law or equity, by the filing or "deemed" filing of a notice of location within 90 days—the period of limitation effectively established by section 687a–1—and a subsequent application to purchase. Indeed, the purpose of protecting existing improvements is reinforced by provisions in the Alaska Native Claims Act, 43 U.S.C. § 1613(c) (1982), requiring Native Village corporations to convey surface title of tracts to persons who had occupied them for residence or business prior to 1971. Both the BLM and the Board suggested in their opinions that Ramstad might qualify for such relief. If so, it is to be doubted that the Native Claim selection application is properly viewed as the kind of adverse

claim that ought to preclude equitable relief under 43 U.S.C. §§ 1161–64 and 43 C.F.R. § 1871–1.

In any event, the scope of the Native Claim application will, by the terms of the 1971 withdrawal, necessarily exclude Ramstad's claim if he is granted equitable relief permitting him to waive the early part of his occupancy and initiate his claim 90 days prior to April 15, 1967. To be sure, there is some circularity in holding that the outcome of equitable adjudication may remove a threshold impediment (i.e., the existence of an "adverse claim") to such relief. There is equal circularity, however, in ruling that Ramstad is not even able to have his prior claim considered because of the assertion of a subsequent claim which is applicable to this land only if Ramstad is denied relief. Finally, to preclude relief because of the mere existence of an adverse claim that potentially excepts Ramstad's land from its scope would seem contrary to one of the provisions of 43 U.S.C. § 1164. That statute provides that equitable adjudication is applicable "where the rights of no other claimant or preemptor are prejudiced, *or* where there is no adverse claim." (Emphasis added.) If the simple existence of another claim were enough to render relief inapplicable, the portion of the statute requiring the assessment of prejudice would be surplusage.

We do not, of course, rule on the nature or validity of any possible claim by Cook Inlet Region, Inc., which is not a party to this proceeding. We merely hold that under the facts presented on this appeal, Ramstad is entitled to have his case equitably adjudicated by the Secretary or his delegate, under the principles of "equity and justice" specified by 43 U.S.C. § 1161, and in light of that statute's remedial purposes. We do not dictate the outcome of that adjudication. If the adjudication is in Ramstad's favor, it serves only to divest the United States of title to the land he claims, and does not operate to the prejudice of conflicting claimants. 43 U.S.C. § 1162.

4. *Conclusion*

The district court was correct in upholding the ruling of the Board that Ramstad had not fully complied with section 687a–1 and was therefore not entitled by law to purchase the claimed land. The district court erred, however, in upholding the Board's ruling that Ramstad was not entitled, on the facts presented by the record and admitted for purposes of the motion for summary judgment, to equitable adjudication.

The summary judgment in favor of defendants is accordingly REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.