**Richard L. NEVITT, Plaintiff-Appellant,**

v.

**UNITED STATES of America, et al. Defendants-Appellees.**

**Nos. 85–4020, 85–4221.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 1987.

Decided Sept. 28, 1987.

Richard L. Nevitt, in pro per.

John T. Stahr, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before GOODWIN, ANDERSON and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

## OVERVIEW

Richard Nevitt appeals the district court's decisions granting the government's motions for summary judgment. The Bureau of Land Management ("BLM") rejected Nevitt's final proof on his homestead claim under the Homestead Act, denied the legislative approval of this claim pursuant to the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3101 et seq. (1982), and rejected his request for a reduction in the cultivation requirements under the Homestead Act. The Interior Board of Land Appeals ("IBLA") and the district court affirmed these three determinations by BLM. On appeal, Nevitt challenges the reasonableness of BLM's regulation defining the cultivation requirement, the agency's failure to consider his family's presence on the land as satisfying the residency requirement, the substantiality of the evidence in support of the agency decisions rejecting his final proof and his application for reduction in cultivation, and the agency's interpretation and administration of Section 1328 of ANILCA (16 U.S.C. § 3215).

## STANDARD OF REVIEW

Determinations by the BLM and the IBLA must be upheld unless arbitrary, capricious, an abuse of discretion, or not in accordance with law. *Dredge Corp. v. Conn,* 733 F.2d 704, 707 (9th Cir.1984); 5 U.S.C. § 706(2)(A) (1986). "[G]reat deference is shown to an administrative agency's interpretation of the law which it is charged with administering." *Ramstad v. Hodel,* 756 F.2d 1379, 1382 (9th Cir.1985) (quoting *Baker v. United States,* 613 F.2d 224, 226 (9th Cir.), *cert. denied, sub nom. Andrus v. Baker,* 449 U.S. 932, 101 S.Ct. 332, 66 L.Ed.2d 157 (1980)). However, this court reviews the district court's decision de novo because the district court is in no better position than this court to review the administrative record. *Id.; Asarco, Inc. v. United States Environmental Protection Agency,* 616 F.2d 1153, 1161 (9th Cir.1980).

## DISCUSSION

### A. Final Homestead Proof

The Homestead Act provides "that the entryman shall in order to comply with the requirements of cultivation herein provided for, cultivate not less than one-sixteenth of the area of his entry, beginning with the second year of the entry, and not less than one-eighth, beginning with the third year of entry and until final proof." 43 U.S.C. § 164 (1986). The Homestead Act also requires actual residency of at least seven months for each year for three years after residence is established. *Id.* Finally, the entryman must prove, through the testimony of two credible witnesses, that he has met the cultivation and residence requirements. *Id.*

Nevitt has never claimed that he has met the cultivation standard. Rather he continues to contend that the regulation defining cultivation is an unlawful interpretation of 43 U.S.C. § 164 (1986). The regulation explicitly states that cultivation "must consist of breaking of the soil, planting or seeding, and tillage for a crop other than native grasses, ... [and] must include such acts and be done in such manner as to be reasonably calculated to produce profitable results." 43 C.F.R. 2567.5(b) (1986). He argues that just clearing the trees from the superior dense area is cultivation because it makes an agricultural improvement to the land.

The interpretation of statutes and regulations by an agency charged with their administration is entitled to due defer-

ence and should be accepted unless demonstrably irrational or clearly contrary to the plain meaning. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965); *Olivares v. Immigration and Naturalization Service,* 685 F.2d 1174, 1177 (9th Cir.1982). Nevitt has failed to demonstrate that the regulatory language is contrary to or inconsistent with the meaning of the statute. *Cf. Nicholas v. Secretary of Department of Interior,* 385 F.2d 177, 180 (9th Cir.1967) (court would not consider contention that the Secretary applied an inappropriate standard or method of cultivation, because entryman failed to cultivate the number of acres required by statute). Thus, we accept the agency's interpretation of the cultivation requirement.

■ The district court held that Nevitt failed to satisfy the statutory residency requirement because he had resided on the land 7 months minus 4 days during his third entry year. Nevitt claims that the district court failed to consider his family's presence on the homestead. However, using the time that his family resided on the land, as shown in his final proof, Nevitt and his family still do not satisfy the residency standard during the third entry year.

Finally, Nevitt maintains that the testimony of his witnesses and himself is not accurately reflected in the record. However, Nevitt's final proof, including the affidavits of his two witnesses, shows that he failed to comply with the cultivation and residency provisions of the Homestead Act. Therefore, the BLM correctly rejected Nevitt's final proof.

## B. Reduction in Cultivation

Nevitt filed his application for a reduction in the cultivation requirements of homestead entrymen on November 17, 1982 under 43 C.F.R. § 2511.4–3(b) (1986). The reduction may be granted "if the land entered is so hilly or rough, the soil so alkaline, compact, sandy, or swampy, or the precipitation of moisture so light as not to make cultivation of the required amounts practicable, or if the land is generally valuable only for grazing." *Id.* § 2511.4–3(b)(1) (1986). Furthermore:

> (3) No reduction in area of cultivation will be permitted on account of expense in removing the standing timber from the land. If lands are so heavily timbered that the entryman cannot reasonably clear and cultivate the area prescribed by the statute, such entries will be considered speculative and not made in good faith for the purpose of obtaining a home. The foregoing applies to lands containing valuable or merchantable timber and will not preclude the reduction of area of cultivation on proper showing in cases where the presence of stumps, brush, lodge pole pine, or other valueless or nonmerchantable timber prevents the clearing and cultivation of the prescribed area.

*Id.* § 2511.4–3(b)(3) (1986). The regulations also provide that individuals "desiring to make homestead entries should first fully inform themselves as to the character and quality of the lands they desire to enter." *Id.* § 2511.1(a)(1) (1986). "[I]f it appears that at the date of the initiation of the claim the conditions were such as to indicate to a prudent person that cultivation of the required acreage was not reasonably practicable ..., the application [for reduction] will be subject to rejection." *Id.* § 2511.4–3(b)(1) (1986).

■ The district court relied on a BLM land report to hold that the agency's denial of a reduction in the cultivation requirement was supported by substantial evidence in the record. The district court cited a land report statement that the parcel was "heavily timbered [and] typical of the area along the Stony River," the agency's finding that Nevitt should have recognized the stumps as a problem at the time of entry, and the land report's conclusion that a bulldozer proved an efficient and effective method of stump removal on a nearby homestead with similar timber conditions. The land report also notes that even if stump size and density were factors beyond the claimant's control, he did have control over the method of removing stumps. Nevitt stated in his affidavit that he did not think that the cost of using a

bulldozer would be worth it. However, 43 C.F.R. § 2511.4–3(b)(3) states that reduction in cultivation will not be granted due to the cost in removing "timber" from the land. Thus, the district court correctly found that the "expenses of compliance does not excuse noncompliance with homestead requirements."

The land report together with the regulations concerning original homesteads provide substantial evidence in support of the agency's rejection of Nevitt's application. Because the agency's decision is supported by substantial evidence, the district court properly disposed of this issue on summary judgment. *McCall v. Andrus,* 628 F.2d 1185, 1189–90 (9th Cir.1980), *cert. denied, sub nom. McCall v. Watt,* 450 U.S. 996, 101 S.Ct. 1700, 68 L.Ed.2d 197 (1981).

## C. Legislative Approval under ANILCA

The agency rejected Nevitt's final proof requesting approval of his homestead claim. After Nevitt appealed this decision to the district court on July 23, 1980, Congress enacted ANILCA with an effective date of December 2, 1980. Section 3215(a) of Title 16 of the U.S. Code, provided for legislative approval of all homestead applications, bypassing the regular BLM adjudication process. Those applications pending as of December 2, 1980 were legislatively approved on the 180th day following the effective date, May 31, 1981, unless a protest was filed. 16 U.S.C. § 3215(a) (1985). If a timely protest was filed, the homestead claim did not receive legislative approval, and BLM held the homestead application for adjudication. *Id.* Subsection (b) allowed the entryman to amend the original land description "if said description designates land other than that which the applicant intended to claim at the time of application and if the description as amended describes the land originally intended to be claimed." 16 U.S.C. § 3215(b) (1985). The statute continued, "[i]f the application is amended, this section shall operate to approve the application or to require its adjudication, as the case may be, with reference to the amended description only." *Id.* If an amendment was filed, the BLM sent a notice to all interested parties, who then had 60 days in which to file a protest. *Id.*

Because Nevitt wanted to ensure that a certain cabin was included within his claim, on May 29, 1981, Nevitt filed an amended land description entitled "Amended Description of Homestead Claim, Additional to Original Description in order to Include Lands which may be Additional to Original Entry." As required by 16 U.S.C. § 3215(a), the BLM sent notice of the amended description to interested parties and received protests, filed by Owens and Halverson, within the 60–day period. The agency denied legislative approval of Nevitt's homestead claim, and the district court affirmed this decision.

■ Nevitt stated in his amended description that he wanted "to include lands which may be additional to those originally described if errors exist in the original staking or final survey (not yet done), which errors may result in lands existing, which were originally intended to be claimed, outside those lands described in the original description." Furthermore, he explained that the filing was made "pursuant to Subsection (b) of Section 1328 of Public Law 96–487." Thus, Nevitt's amended description, on its face and by his own characterization, meets the statutory requirements of 16 U.S.C. § 3215(b).

Nevitt asserts that the agency failed to follow its existing procedures for the amendment of homestead applications. His position would have required the BLM to perform two adjudications, one at the time the agency accepted an amendment and a second when proper protests were filed. However, none of the cases that Nevitt cites supports this contention.

Nevitt also claims that the protest and adjudication provisions of 16 U.S.C. § 3215(b) apply only to the amended portion of his entry and not to the total parcel. Therefore, he contends his claim as originally described should have received legislative approval. Nevitt cites the phrase in 16 U.S.C. § 3215(b) "with reference to the amended land description only" for this contention. But read in light of the prior sentence, the "amended land description" refers to the "land originally intended to be

claimed." The legislative history of § 905(c) of ANILCA, the provision upon which § 1328 is largely based, further supports this interpretation. Furthermore, the IBLA stated that "the amended or corrected land description refers to the *total* parcel that appellant intended to claim[.]" The agency's interpretation is reasonable and thus entitled to great deference. *Udall,* 380 U.S. at 16–17, 85 S.Ct. at 801–02, *quoting Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700; *Olivares,* 685 F.2d at 1177.

Because Nevitt filed a valid amendment under 16 U.S.C. § 3215(b), this filing triggered an additional protest period provided by 16 U.S.C. § 3215(b). We must then consider whether Owens or Halverson filed a protest that met the requirements of 16 U.S.C. § 3215(a)(3)(C), not whether either protester is actually entitled to any improvements located on Nevitt's homestead. This provision states that a homestead application shall not be legislatively approved if "a person or entity files a protest with the Secretary stating that the applicant is not entitled to the land described in the application and that said land is the situs of improvements claimed by the person or entity." 16 U.S.C. § 3215(a)(3)(C) (1985). If a protest meets these criteria, the homesteader's claim and protesters' claims are to be adjudicated, pursuant to 16 U.S.C. § 3215(a), under the requirements of the relevant homestead law, in this case, 43 U.S.C. § 164.

Both Halverson's and Owens' protests, which are part of the record, satisfy the requirements of 16 U.S.C. § 3215(a)(3)(C). The protests challenge Nevitt's entitlement to the property and claim an interest in a cabin allegedly within Nevitt's homestead. These protests, even if later found to be invalid, are enough to block legislative approval of Nevitt's pending homestead application. Therefore, the agency correctly denied legislative approval of Nevitt's homestead application and properly held it for adjudication.

AFFIRMED.