Gulamali KARMALI & AF–CHIM
Pullman Enterprises, Inc.,
Plaintiffs-Appellants,

v.

UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,
Defendant-Appellee.

No. 81–3643.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1982.

Decided June 1, 1983.

Bruce H. Erickson, Erickson & Erickson, Spokane, Wash., for plaintiffs-appellants.

William H. Beatty, Spokane, Wash., for defendant-appellee.

Before KILKENNY, CHOY and FLETCHER, Circuit Judges.

CHOY, Circuit Judge:

Gulamali Karmali and AF–CHIM Pullman Enterprises, Inc. (AF–CHIM) appeal from the magistrate's grant of summary judgment upholding the Immigration and Naturalization Service's (Service) denial of AF–CHIM's petition for an intra-company transfer visa on behalf of Karmali. We affirm.

I

Karmali was born in Tanzania. He subsequently emigrated to Canada and became a Canadian citizen. In November 1976, Karmali began employment with AF–CHIM, a Canadian corporation closely held by his brother-in-law, Sultan Nazerali Walji. Karmali was "to assist and to investigate new holdings in the management of AF–CHIM's holdings wherever these holdings were located."

In April 1977, Walji and his wife (Karmali's sister) advanced money to Karmali in order to allow Karmali to purchase the Lantern Motel, Cafe, and KOA campground at Bonners Ferry, Idaho. On July 20, 1977, the purchase transaction was completed and Karmali entered the United States with his wife to operate the business. Karmali re-

mained in the United States and managed the Idaho property until October 4, 1977, at which time he returned to Canada for three days. Subsequent to his return to the United States, Karmali was charged with having entered this country illegally in that he had worked and resided here without the benefit of an immigrant visa.[1]

On December 9, 1977, AF–CHIM filed a petition with the Service's Spokane office for an intra-company transfer visa on behalf of Karmali. The District Director denied the petition. The District Director's decision was appealed to the Regional Commissioner, who affirmed the decision and also denied AF–CHIM's subsequent motion for reconsideration. On December 29, 1980, the appellants filed a complaint in the district court, grounded on the Declaratory Judgment Act, 28 U.S.C. § 2201, contending that the Service's denial of the petition "was arbitrary and capricious and without legal basis," and seeking "an order directing the [Service] to issue" the petition. The presiding magistrate concluded that the Regional Commissioner did not abuse his discretion in denying AF–CHIM's petition and granted the Service's motion for summary judgment. The instant appeal followed.[2]

## II

■ The appellants' complaint alleged, and the Service's answer admitted, that district courts have jurisdiction to review the Regional Commissioner's denial of an intra-company transfer visa petition solely by virtue of the Declaratory Judgment Act. However, the Declaratory Judgment Act is not a jurisdictional statute; it merely provides an additional remedy where the court has an otherwise valid jurisdictional basis to consider the case.[3] *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–879, 94 L.Ed. 1194 (1950). Thus, the appellants' complaint was facially deficient in setting forth an appropriate jurisdictional basis. Since the magistrate, too, failed to articulate what independent jurisdictional basis warranted adjudication of this declaratory judgment action, we preliminarily address this matter.

While there is no specific provision in the Immigration and Nationality Act of 1952, Pub.L. No. 82–414, 66 Stat. 163 (codified as amended at 8 U.S.C. §§ 1011–1525 (1976 & Supp. V 1981) (Act)) that grants or denies federal district courts the power to review the Attorney General's determinations on intra-company transfer visa petitions, section 279 of the Act states that "[t]he district courts of the United States shall have jurisdiction of *all causes,* civil and criminal, *arising under* any of the provisions of *this subchapter."* 8 U.S.C. § 1329 (1976) (emphasis added). Because section 279 apears in subchapter II of the Act, the court below would have had jurisdiction if the appellants' claim arose under any of the provisions in subchapter II.

■ The intra-company transfer visa petition in this case was filed pursuant to 8 C.F.R. § 214.2(1),[4] which sets forth special

1. The proceedings over this matter are still pending, but they need not concern us here because the case is not before us on a petition for direct review of the deportation hearings under 8 U.S.C. § 1105a(a).

2. The parties consented to proceed before the magistrate pursuant to 28 U.S.C. § 636(c).

3. The Declaratory Judgment Act states:

   In a case of actual controversy *within its jurisdiction,* except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

   28 U.S.C. § 2201 (Supp. V 1981) (emphasis added).

4. 8 C.F.R. § 214.2(*l*)(1) (1982) states:

   (1) *Petition.* An alien defined in section 101(a)(15)(L) of the Act must be the beneficiary of an approved visa petition filed on Form I–129B. . . . A petition approved under this paragraph is valid for the period of established need for the beneficiary's temporary services but not to exceed three years. . . . The petitioner, who need not be a United States resident, must be notified of

requirements for admission of a category of non-immigrants known as "intra-company transferees." The regulation derives statutory authority from section 101(a)(15)(L) of the Act, 8 U.S.C. § 1101(a)(15)(L), and section 214 of the Act, 8 U.S.C. § 1184(c). Section 101(a)(15)(L) defines who may be deemed an intra-company transferee;[5] it falls outside subchapter II. Section 214 authorizes the Attorney General to determine who may be eligible for admission under section 101(a)(15)(L);[6] it falls within subchapter II. The appellants in this case do not seek to challenge the propriety of the definition of an intra-company transferee as set forth in section 101(a)(15)(L). They claim instead that the Regional Commissioner here had misinterpreted the *underlying meaning* of the definitional requirements in section 101(a)(15)(L). Thus, we feel that the appellants have stated a cause of action under section 214 of the Act that vests in the Attorney General the power to

interpret the definitional requirements in section 101(a)(15)(L).[7] Because section 214 falls within subchapter II of the Act, we conclude that 8 U.S.C. § 1329 provided an independent jurisdictional basis for adjudication of the declaratory judgment action below.[8]

### III

The pertinent inquiry when reviewing a grant of summary judgment is whether there exist genuine issues of material fact underlying the adjudication and, if not, whether the substantive law was correctly applied. *United States v. Bissett-Berman Corp.,* 481 F.2d 764, 767 (9th Cir.1973). The material facts in this case are not contested. However, the appellants contend that the magistrate erred in agreeing with the Regional Commissioner's allegedly erroneous interpretation of the requirement in section 101(a)(15)(L) that an intra-company trans-

---

the decision and, if the petition is denied, of the reason for the denial and of the right to appeal under Part 103 of this chapter.

**5.** Section 101(a)(15)(L) of the Act recognizes a class of non-immigrants defined as follows:

an alien who, immediately preceding the time of his application for admission into the United States, has been *employed continuously for one year* by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and *who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof* in a capacity that is managerial, executive, or involves specialized knowledge, and the alien spouse and minor children of any such alien if accompanying him or following to join him.

8 U.S.C. § 1101(a)(15)(L) (1976) (emphasis added).

**6.** Section 214 of the Act provides:

The question of importing any alien as [an intra-company transferee] in any specific case or specific cases *shall be determined by the Attorney General,* after consultation with appropriate agencies of the Government, *upon petition* of the importing employer. *Such petition shall be made and approved before the visa is granted.* The petition shall be in such form and contain such information as the Attorney General shall prescribe.

8 U.S.C. § 1184(c) (1976) (emphasis added).

**7.** The Attorney General's power of determination over intra-company transferee petitions, as

with his power over other immigration matters, has been delegated to various officers of the Service. 8 C.F.R. § 100.2 (1982).

**8.** The appellants argue in their supplemental brief that 28 U.S.C. § 1331, giving jurisdiction to federal district courts over matters involving federal questions, provides the requisite independent jurisdictional ground to support a declaratory judgment action of this type. *See Ghorbani v. INS,* 686 F.2d 784, 791 (9th Cir. 1982); *Navarro v. INS,* 574 F.2d 379, 383 (7th Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 182, 58 L.Ed.2d 170 (1978). The Service points out, however, that 28 U.S.C. § 1331 confers jurisdiction on federal courts to review agency action subject to preclusion-of-review statutes created by Congress. *Califano v. Sanders,* 430 U.S. 99, 105 (1977). Since § 279 of the Act indicates a deliberate attempt by Congress to limit the jurisdiction of the district courts to *those matters arising under subchapter II* of the Act, the Service argues, one must conclude that 28 U.S.C. § 1331 provides no basis for jurisdiction beyond that permitted by § 279. We do not feel compelled to decide now whether § 279 of the Act constitutes a preclusion-of-review statute that may operate to limit the federal-question jurisdiction of the district courts in cases involving immigration matters in view of the Service's concession and our holding that the district court's jurisdiction over this case was proper under § 279 of the Act.

feree be "employed continuously for one year" prior to seeking admission into the United States temporarily "in order to continue to render his services to the same employer." 8 U.S.C. § 1101(a)(15)(L).

The Regional Commissioner interpreted the language "employed continuously for one year" in section 101(a)(15)(L) of the Act to mean one year of continuous employment *abroad* prior to seeking admission into this country as an intra-company transferee. Thus, the Regional Commissioner determined that Karmali does not qualify as an intra-company transferee because he entered the United States in July 1977, only eight months after he started working for AF–CHIM in Canada in November 1976, and remained and worked here until AF–CHIM filed the intra-company transferee petition for Karmali in December 1977.[9] The appellants contend that the language "employed continuously for one year" means no more than what it says, and that neither section 101(a)(15)(L) nor its legislative history precludes a prospective intra-company transferee from spending part of the qualifying one-year employment period in the United States. Since Karmali's presence in this country constituted continuous employment for AF–CHIM, the appellants argue, Karmali had satisfied the requisite one-year employment period by the time AF–CHIM filed the petition in December 1977.

■ The Service's interpretation of the statutory language in question should be given deference. *Olivares v. Immigration and Naturalization Service,* 685 F.2d 1174, 1177 (9th Cir.1982) ("The interpretation of a statute by the agency or department charged with its administration is entitled to great deference and should be accepted unless demonstrably irrational or clearly

contrary to the plain and sensible meaning of the statute."). Despite the appellants' bald assertion to the contrary, we find clear legislative support for the Service's position that the requisite one year of continuous employment by a prospective intra-company transferee take place abroad.

Section 101(a)(15)(L) of the Act states that an intra-company transferee is not merely one "who, immediately preceding the time of his application for admission into the United States, has been employed continuously for one year," but also one "who seeks to enter the United States temporarily." 8 U.S.C. § 1101(a)(15)(L). As the Service persuasively notes, the two requirements evince congressional intent that the requisite one year of continuous employment take place *abroad.* Such an interpretation is supported by the following analysis of the section prepared by the House Judiciary Committee:

> Consideration of the petition will involve verification of the prior employment of the individual for a continuous period of at least 1 year *abroad* by a company affiliated with the parent, subsidiary, or branch located in the United States and verification that the subject of the petition is in a managerial, executive, or specialized knowledge capacity and is the subject of a transfer to the United States.

H.R.Rep. No. 851, 91st Cong., 2d Sess. 6, *reprinted in* 1970 U.S.Code Cong. & Ad. News 2750, 2755 (emphasis added).

While the Service's interpretation of section 101(a)(15)(L) as requiring one year of continuous employment abroad is plainly consistent with congressional intent, the appellants have not advanced any support for their assertion that part of the one-year employment period can be spent in the United States.[10] We therefore conclude

---

**9.** Karmali's presence in the United States was uninterrupted except for the three-day trip to Canada in October 1977.

**10.** We do not see any merit to the appellants' contention that the Service's interpretation of § 101(a)(15)(L) as requiring one year of continuous employment abroad violates an alien's "freedom" of travel. Congress has plenary power over the admission and exclusion of

aliens, and it is entirely within Congress' discretion to place conditions on an alien's entry or continued presence in this country. *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972); *McJunkin v. INS,* 579 F.2d 533, 536 (9th Cir.1978). The

that the Service did not abuse its discretion in denying AF–CHIM's petition for Karmali on the ground that Karmali did not meet the requirement of one year of continuous employment abroad prior to seeking entry into the United States as an intra-company transferee under section 101(a)(15)(L) of the Act.[11] The grant of summary judgment below is AFFIRMED.

appellants also assert that Karmali's presence in this country for the last four months of the required one year of continuous employment was justified because his original entry was occasioned by a visitor's visa that is routinely given to visitors for a period of usually six months. We disagree. If an alien could use the fact of his justified presence in the United States for a substantial part of the qualifying period to avoid the requirement of one year of continuous employment abroad, very little meaning would remain of the requirement. However, we reserve the question of what extenuating circumstances may warrant brief visits to the United States during the qualifying period that may not break the chain of continuity in the requirement of one year of continuous employment abroad.

11. It is not necessary that we address any other issue presented in this appeal.