67 F.3d 305
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
BOYANG, LTD. and Hee-Sung Jang, Plaintiffs-Appellants,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Defendant-Appellee.
 No. 94-35535.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 15, 1995.
Decided Sept. 29, 1995.
 
 1
 Before: ALARCON, CANBY, Circuit Judges and FITZGERALD,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Boyang Ltd. and Hee-Sung Jang (collectively "Boyang") appeal from the district court's grant of summary judgment in favor of the Immigration and Naturalization Service (INS). The district court affirmed the denial of Boyang's application to extend Jang's nonimmigrant status as an intracompany transferee, pursuant to 8 U.S.C. Sec. 1101(a)(15)(L) (1988 ed. Supp.V).[1] Boyang contends that the Administrative Appeals Unit (AAU) of the INS erred in ruling that Boyang's branch office was not doing business in the United States and that Jang was not acting primarily in a managerial capacity. Boyang also seeks attorney's fees for the preparation of this appeal.
 
 
 4
 We affirm the district court's grant of summary judgment because the AAU's action was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. We deny Boyang's request for attorney's fees.
 
 
 5
 * Boyang is a Korean corporation involved in marine transportation and vessel chartering operations. Jang is a native and citizen of Korea. Jang entered the United States on March 6, 1990, pursuant to a temporary business visitor's visa, authorized by 8 C.F.R. Sec. 214.2(b)(1) (1995), to establish Boyang's branch office in this country.
 
 
 6
 On April 2, 1990, Boyang filed an intracompany transferee visa petition with the INS to employ Jang as a manager or executive in its United States office.[2] On April 25, 1990, the INS approved Boyang's petition. The visa was valid until April 25, 1991.
 
 
 7
 On March 5, 1991, Boyang submitted an application to the Director for the INS's Northern Service Center (Director) for an extension of Jang's visa. To obtain an extension, Boyang was required to demonstrate that it was doing business in the United States, pursuant to 8 C.F.R. Sec. 214.2(l)(1)(ii)(H) (1995) and that Jang was employed primarily in a managerial or executive capacity, pursuant to 8 C.F.R. Sec. 214.2(l)(1)(ii)(B) (1995). Boyang submitted additional materials in support of the extension application on March 26, 1991. On April 24, 1991, the Director denied Boyang's application for an extension of Jang's status as an intracompany transferee.
 
 
 8
 Boyang filed a motion for reconsideration and a notice of appeal on May 21, 1991.[3] After reviewing the motion for reconsideration and appeal, and determining that favorable action was not warranted, the Director forwarded the appeal to the AAU on July 22, 1991. On October 21, 1992, the AAU dismissed Boyang's appeal.
 
 
 9
 Boyang submitted a motion to reopen together with a motion for reconsideration and a supporting memorandum to the AAU on November 6, 1992. On July 22, 1993, the AAU granted Boyang's motion to reopen and affirmed the denial of Jang's visa extension application.
 
 
 10
 On August 13, 1993, Boyang filed for declaratory relief in the district court. The district court had jurisdiction pursuant to 8 U.S.C. Sec. 1329 (1988). Section 1329 provides, in pertinent part, that "The district courts ... shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter...." See Karmali v. INS, 707 F.2d 408, 410 (9th Cir.1983) (8 U.S.C. Sec. 1329 provides a jurisdictional basis for adjudication of a declaratory judgment action involving petitions filed pursuant to 8 C.F.R. Sec. 214.2). On May 9, 1994, the district court granted the INS's motion for summary judgment.
 
 II
 
 11
 Boyang contends that the district court erred in granting the INS's motion for summary judgment because there are genuine issues of material fact in dispute. We review a grant of a summary judgment de novo. Lauvik v. INS, 910 F.2d 658, 659 (9th Cir.1990). Boyang misconstrues a district court's role in reviewing an administrative agency's decision. A district court is not required to resolve any factual issues when reviewing administrative proceedings. Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir.1985). Instead, the district court's function is to determine "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id. Accordingly, summary judgment "is an appropriate mechanism for deciding the legal question [ ] whether the agency could reasonably have found the facts as it did." Id. at 770.
 
 
 12
 An agency's decision must be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1988); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414 (1971); Yerger v. Robertson, 981 F.2d 460 (9th Cir.1992). An agency's action is arbitrary and capricious if the agency failed to consider all relevant facts or to "articulate a satisfactory explanation for [the decision] including a 'rational connection between the facts found and the choice made.' " Id. at 463 (citations omitted). Our review under the arbitrary and capricious standard is narrow. Id. "We 'may not substitute [our] judgment for that of the agency.' " Id. (citations omitted). We only decide whether the agency's action was based upon " 'a consideration of the relevant factors and whether there has been a clear error of judgment.' " Nevada Land Action Ass'n v. United States Forest Serv., 8 F.3d 713, 716 (9th Cir.1993) (citations omitted).
 
 
 13
 We review an administrative agency's factual findings for substantial evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474, 490 (1951); Ramos-Vasquez v. INS, 57 F.3d 857, 861 (9th Cir.1995). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Turcios v. INS, 821 F.2d 1396, 1398 (9th Cir.1987) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).
 
 
 14
 * An alien must satisfy two requirements to qualify for an extension of his or her visa as an intracompany transferee. An alien must be employed "continuously for one year by a firm or corporation or other legal entity ... in a capacity that is managerial, executive, or involves specialized knowledge." 8 U.S.C. Sec. 1101(a)(15)(L). The company employing the alien must be doing business in the United States. 8 C.F.R. Sec. 214.2(l)(1)(ii)(H).
 
 
 15
 Managerial capacity is defined in the Code of Federal Regulations as:
 
 
 16
 an assignment within an organization in which the employee primarily:
 
 
 17
 (1) Manages the organization, or a department, subdivision, function, or component of the organization;
 
 
 18
 (2) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
 
 
 19
 (3) Has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) if another employee or other employees are directly supervised; if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
 
 
 20
 (4) Exercises discretion over the day-to-day operations of the activity or function for which the employee has authority. A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.
 
 
 21
 8 C.F.R. Sec. 214.2(l)(1)(ii)(B) (emphasis added).
 
 Doing business is defined as:
 
 22
 the regular, systematic, and continuous provision of goods and/or services by a qualifying organization and does not include the mere presence of an agent or office of the qualifying organization in the United States.
 
 
 23
 8 C.F.R. Sec. 214.2(l)(1)(ii)(H) (emphasis added). Boyang has the burden of establishing Jang's eligibility for an extension of status as an intracompany transferee. 8 U.S.C. Sec. 1361 (1988); Transkei v. INS, 923 F.2d 175, 178 (D.C.Cir.1991).
 
 
 24
 Boyang did not advance separate arguments regarding the managerial capacity and doing business prongs of this analysis. Instead, Boyang merely asserts that it "submitted voluminous evidence regarding the company's activities in the United States, and the expansion of their operation in the United States, and Boyang and Mr. Jang believe this evidence met their evidentiary burdens in support of the [ ] extension application."
 
 B
 
 25
 The AAU determined that Boyang had not submitted sufficient evidence to demonstrate that Jang was employed primarily in a managerial capacity as defined by 8 C.F.R. Sec. 214.2(l)(1)(ii)(B). In support of its motion for reconsideration, Boyang filed a letter, dated May 16, 1991, which lists Jang's responsibilities as follows:
 
 
 26
 [N]egotiating contracts with entities in the United States for the shipment of marine products; supervising loading and unloading, and vessel scheduling, to achieve optimum use of each marine vessel; establishing, implementing, and directing repair and refurbishing schedules, and supervising the purchase of necessary replacement equipment; ensuring that necessary port facilities are available, including pilotage and moorage requirements; making certain that all necessary legal documentation is obtained and maintained, collecting and maintaining information relating to fishing activities in Alaska; and advising officials at corporate headquarters with respect to anticipated need for marine vessels in the near and relatively distant future.
 
 
 27
 This factual recitation is undisputed. Boyang's April 2, 1991, application for an extension of Jang's nonimmigrant status further indicates that "Mr. Jang will continue to manage the branch office in Seattle WA. He will be in charge of negotiating contracts and representing Boyang Ltd., in all business matters at the Seattle branch office. He will be in charge of hiring & overseeing all employees within the branch office."
 
 
 28
 Boyang submitted Jang's affidavit in support of its motion for reconsideration. This affidavit alleges that Jang is responsible for "establishing and implementing methods, systems, and procedures to minimize risks and financial loss." Jang's affidavit indicates that he "advise[s], direct[s], and supervise[s] employees of Alaska Maritime Services, Inc., which by contract provides a variety of maritime services to the Boyang organization." Jang further notes that his duties "also require review of all billing submitted to the Seattle branch office assuring proper payment to all entities providing services to that office."
 
 
 29
 In rejecting Boyang's petition, the Director stated that the INS must look
 
 
 30
 beyond the stated job title and consider the actual day-to-day duties being performed as well as the overall size and scope of the business operation. When a company has a very limited number of employees, it becomes questionable as to whether the operator of the business is engaged primarily in managerial or executive duties. The [INS] may reasonably conclude in such a case that a wide range of daily functions associated with running a business will be performed and that these duties are unrelated to the definitions of manager or executive. Moreover, it is apparent that the actual time devoted to these functions would exceed that which is spent in purely managerial or executive duties for the company.
 
 
 31
 The Director noted that although Boyang, in its original petition, indicated that it had already "hired a sales and marketing consultant ... [a]t the present time, the petitioner no longer employs the sales and marketing consultant[.]" The Director found that "[o]ther than the secretary, no additional employees are on the payroll for the US business." The Director recognized that Jang's responsibilities were "to negotiate contracts to dispatch vessels and/or trampers for transportation of marine cargo, represent the Korean company in all business matters in the United States, and to be in charge of hiring and overseeing all employees within the branch office." The Director concluded that "[i]n view of the above, the [INS] is not persuaded that [Jang's] duties in this position are primarily that of an executive or manager. Rather[,] it would appear that [Jang] is engaged primarily in the day-to-day operations of the business itself."
 
 
 32
 The AAU's first denial letter reviewed Jang's responsibilities. It noted that the sales consultant had resigned after two months of employment and that Jang only supervised the secretary. The denial letter stated that because the sales consultant resigned, Jang controlled the business development of the Seattle branch. Upon the evidence before it, the AAU concluded that Boyang had not shown that Jang "currently manages a subordinate staff who will relieve him from performing the services of the corporation. Consequently, it cannot be found that the beneficiary will be employed in a qualifying managerial or executive capacity."
 
 
 33
 The AAU's second denial letter also examines the duties Jang performed for Boyang. It states that such duties "do not establish responsibilities which are primarily managerial or executive in nature." Instead, according to the AAU, Jang had been primarily performing the services necessary to maintain Boyang's business. The AAU found that the evidence submitted by Boyang did not establish that Jang "functions at a senior level within the hierarchy other than in position title." The AAU concluded that Jang "has worked as a shipping agent[4] in the United States and not as a manager[.]"
 
 
 34
 There is sufficient relevant evidence in the record to support the AAU's conclusion that Boyang failed to fulfill its burden of persuasion that Jang was employed primarily in a managerial capacity. According to the regulations, a person is employed in a managerial capacity if the employee primarily supervises and controls the work of "other supervisory, professional, or managerial employees." 8 C.F.R. Sec. 214.2(l)(1)(ii)(B). The record demonstrates that Jang directly supervised one employee, a secretary, for only one month.[5] She performed routine office tasks. Under the regulations, supervision of a secretary is not sufficient to show that Jang is a manager. Id.
 
 
 35
 It is undisputed that Jang also advised, directed, and supervised employees of Alaska Maritime Services, Inc. (Alaska Maritime). Under the regulations, however, supervising employees of a corporation with which the company has a contractual relationship is not sufficient to qualify an applicant as a manager. To be a manager, the individual must primarily supervise and control the work of "other supervisory, professional, or managerial employees ... within the organization." 8 C.F.R. Sec. 214.2(l)(1)(ii)(B) (emphasis added).
 
 
 36
 The evidence presented by Boyang also establishes that Jang negotiated contracts and represented Boyang in the United States. There is no evidence in the record, however, that demonstrates Jang managed an essential function within the organization, or that he exercised independent discretion as to the terms of these agreements. See 8 C.F.R. Sec. 214.2(l)(1)(ii)(B)(2), (4) (1995) (a manager "manages an essential function within the organization," or "[e]xercises discretion over the day-to-day operations of the activity or function for which the employee has authority."). Rather, it appears that Jang was directly involved in negotiating contracts and representing Boyang.
 
 
 37
 The regulations provide that a manager "has authority to hire and fire ... if another employee or other employees are directly supervised." 8 C.F.R. Sec. 214.2(l)(1)(ii)(B)(3). Jang's affidavit indicates that he hires and oversees all employees in the Seattle branch office. The record shows, however, that the only employee hired by Jang was his secretary. The secretary left Boyang after being employed for only one month.
 
 
 38
 The regulations also provide that if no other employee is directly supervised, a manager must function "at a senior level within the organizational hierarchy." Id. Boyang failed to present any evidence that Jang functioned at a senior level within the Boyang organization.
 
 
 39
 The record demonstrates that Jang enjoyed the title of "Section Chief/Manager," and that he had discretionary authority regarding negotiating contracts and hiring employees for the Seattle branch. The INS asserts that "[a]n employee's position must encompass more than an impressive title and discretionary authority for the employee to be considered a manager." We agree.
 
 
 40
 In Matter of Church of Scientology Int'l, 19 I & N Dec. 593 (BIA 1988), the Board of Immigration Appeals (BIA) noted that "[h]aving discretionary authority and a managerial or executive title ... does not, in and of itself, mean a person is employed in a managerial or executive capacity." Id. at 604. The BIA stated that "[a]n employee who primarily performs the tasks necessary to produce a product or to provide services is not considered to be employed in a managerial or executive capacity." Id.
 
 
 41
 In that action, the question confronting the BIA was whether a religious organization had a "qualifying relationship" necessary to extend an employee's nonimmigrant status as an intracompany transferee. Id. at 593-602. The question whether the individual was acting primarily as a manager was not raised before the BIA. Id. at 604. The BIA noted, however, that the alien was responsible for a staff of twenty including two division heads, and that she " 'wrote programs which she implemented' to ensure that Church policy was followed." Id. On the basis of these facts, the BIA stated that the alien appeared to be employed as a staff member rather than as a manager. Id. Similarly, in this action, the record demonstrates that Jang acted solely as a member of Boyang's staff.
 
 
 42
 Boyang cites National Hand Tool Corp. v. Pasquarell, 889 F.2d 1472 (5th Cir.1989), for the proposition that 8 U.S.C. Sec. 1101(a)(15)(L) was not meant to limit the definition of the term managers to individuals who supervise a large number of persons or large enterprises. In National Hand Tool Corp., the Fifth Circuit stated, in dicta, that "[t]he notion that a relatively large organization can have managerial employees who comply with the regulation, while a small company, with a managerial employee (or employees) discharging virtually identical duties, cannot, finds no support in the statute." Id. at 1476 n. 5.
 
 
 43
 Boyang's reliance on National Hand Tool Corp. is misplaced. In that matter, the Fifth Circuit held that the petitioner was not acting primarily as a manager because he spent most of his time performing audits rather than directing others in the preparation of audits. National Hand Tool Corp., 889 F.2d at 1476-77. The court emphasized that its holding was not based on the small size of the organization. Id. at 1476 n. 5. Instead, it found that "there was a significant failure to make a factual showing that [the individual] himself was 'primarily' a manager." Id. at 1476. Similarly, in this action, the number of employees and the size of the organization is not dispositive. Rather, after reviewing all of the evidence submitted in support of Boyang's petition, it is clear that Boyang failed to present sufficient evidence to meet its burden of persuasion that Jang was acting primarily as a manager.
 
 
 44
 Although some of Jang's duties could be characterized as managerial, we are persuaded that substantial evidence supports the AAU's determination that Jang was performing "first-line" duties under the supervision of Boyang's executives rather than acting primarily in a managerial capacity, as that term is defined in 8 C.F.R. Sec. 214.2(l)(1)(ii)(B). Boyang further contends that the INS failed to consider relevant evidence because it failed to "account for, or otherwise discuss, the managerial and supervisory duties that Mr. Jang exerts over Boyang's ships, ship captains and ship officers." Boyang's assertion lacks merit.
 
 
 45
 The AAU expressly noted that Jang was responsible for "supervising [the] loading and unloading, and vessel scheduling, ... establishing, implementing, and directing repair and refurbishing schedules, and supervising the purchase of necessary replacement equipment; ensuring that necessary port facilities are available, including pilotage and moorage requirements and making certain that all necessary legal documentation is obtained and maintained." The AAU found that these activities did "not establish responsibilities which are primarily managerial or executive in nature." Accordingly, the AAU concluded that the record did not demonstrate that Jang "was primarily working in either a managerial or executive capacity." The record demonstrates that the AAU considered all relevant evidence in making its determination that Jang was not employed primarily in a managerial capacity, as defined by 8 C.F.R. Sec. 214.2(l)(1)(ii)(B).
 
 
 46
 Boyang asserts in its statement of issues before this court that the AAU erred by considering irrelevant facts in making its determination that Jang was not acting primarily as a manager. Boyang failed to present any argument to support this assertion. Rule 28(a)(6) of the Federal Rules of Appellate Procedure provides, in pertinent part, that: "[t]he argument must contain the contentions of the appellant on the issues presented and the reasons therefor, with citations to the authorities, statutes, and part of the record relied on." "Issues raised in a brief which are not supported by argument are deemed abandoned." United States v. Loya, 807 F.2d 1483, 1487 (9th Cir.1987). We will, however, review "an issue not properly presented if a failure to do so would result in manifest injustice." Id. Boyang does not claim that manifest injustice will result if this court declines to review its assertion that the AAU considered irrelevant facts. Boyang has abandoned the question whether the AAU considered irrelevant facts.
 
 B
 
 47
 The AAU also determined that Boyang had not submitted sufficient evidence to demonstrate that Boyang was doing business in the United States as defined by 8 C.F.R. Sec. 214.2(l)(1)(ii)(H). In light of our conclusion that there is sufficient relevant evidence in the record to support the AAU's conclusion that Boyang failed to fulfill its burden of persuasion that Jang was employed primarily in a managerial capacity, we need not address the question whether Boyang was doing business in the United States as defined by the statute.
 
 III
 
 48
 Boyang requests an award of attorney's fees, pursuant to 28 U.S.C. Sec. 2412(b) (1988). Section 2412(b) provides us with the discretion to award attorney's fees to the prevailing party. Boyang is not the prevailing party. Therefore, Boyang's request for attorney's fees is denied.
 
 
 49
 AFFIRMED.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 8 U.S.C. Sec. 1101(a)(15)(L) defines a class of nonimmigrants, eligible for visas, in pertinent part, as follows:
 an alien who, within three years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity ... and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive....
 
 
 [2]
 8 C.F.R. Sec. 214.2(l)(1)(i) (1995) authorizes the filing of a petition for a visa to employ an intracompany transferee. It provides, in pertinent part:
 Under [8 U.S.C. Sec. 1101(a)(15)(L) ], an alien who within the preceding three years has been employed abroad for one continuous year by a qualifying organization may be admitted temporarily to the United States to be employed by a parent, branch, affiliate, or subsidiary of that employer in a managerial or executive capacity....
 
 
 [3]
 8 C.F.R. Sec. 103.3(a)(2) (1995) provides, in pertinent part, that:
 (ii) Reviewing official. The official who made the unfavorable decision being appealed shall review the appeal....
 (iv) Forwarding appeal to AAU. If the reviewing official will not be taking favorable action or decides favorable action is not warranted, that official shall promptly forward the appeal and the related record of the proceeding to the AAU in Washington, DC.
 
 
 [4]
 The AAU does not define the term "shipping agent." This term is discussed in section II(B) of this opinion
 
 
 [5]
 During oral argument, both parties indicated that Jang also supervised an employee in Dutch Harbor, Alaska. Jang's October 25, 1993 affidavit, filed in opposition to the INS' motion for summary judgment, indicates that Boyang would "be opening an additional branch/liaison office in Dutch Harbor, Alaska to help run our operations more smoothly. The Dutch Harbor office will be operated by Tim X. Honan, a former Dutch Harbor city councilman." Jang's affidavit also states that "we have hired Mr. Jin Han Kim in October 1993 as our vessel operation manager." We cannot consider the evidence contained in Jang's affidavit regarding the employee who was hired in October 1993 or the employee who may have been hired by Boyang in 1994. Our review is limited to the evidence in the administrative record. Gomez-Vigil v. INS, 990 F.2d 1111, 1113 (9th Cir.1993)