**Wei-Jhai CHANG, Plaintiff,**

v.

**Janet RENO, Defendant.**

**No. CA 97–0551.**

United States District Court,
District of Columbia.

Dec. 17, 1997.

---

Michael E. McKenzie, Arlington, VA, for Plaintiff.

Greg Addington, Special Assistant United States Attorney, Washington, DC, for Defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment; Plaintiff's opposition thereto and Cross–Motion for Summary Judgment; and Defendant's reply and response. For the reasons set out below the Court denies Defendant's Motion, and remands the matter to the District Director of the Immigration and Naturalization Service.

## Background

Wei-Jhai Chang came to America from his native Taiwan in August 1976 on an exchange visitor visa (a student visa) under 8 U.S.C. § 1101(a)(15)(j). Mr. Chang enrolled as a student at Virginia Military Institute, and graduated from VMI in 1980.

At the time of his arrival, Mr. Chang was on active duty as a military cadet for the Republic of China, and as such was required to return to Taiwan upon the completion of his course of study. He did not return to Taiwan, but instead married a U.S. citizen, Ai–Dee Li, in 1983. The Changs' daughter, Claudia Lynn Chang, was born in Fairfax, Virginia, in 1984. The couple divorced in 1989; and both Mr. and Mrs. Chang continued to reside in Northern Virginia. The divorce decree designates Mrs. Chang as custodial parent.

In affidavits included in the administrative record of this case, both Mrs. and Mr. Chang state that he pays some $500 per month in child support for Claudia, that Claudia is covered under his health care insurance plan, and that he has helped Mrs. Chang pay for her car insurance.

In October 1993 the INS issued an Order to Show Cause and Notice of Hearing to Mr. Chang for overstaying his student visa. The Order required him to appear before an immigration judge and show cause why he should not be deported.

In December 1993, Mr. Chang applied for permanent resident status in the U.S., pursuant to 8 U.S.C. § 1255, by filing an application on behalf of his employer (Cheng's Oriental Restaurant) for an alien labor certification. Such certification is mandatory for the adjustment of status under 8 U.S.C. § 1182(a)(5). In February 1994 his application for labor certification was granted by the U.S. Department of Labor. Also in February, Mr. Chang applied for a waiver of his two-year foreign residency requirement, on the grounds that it would impose extreme hardship on his U.S. citizen daughter, Claudia. In support of his application for waiver he included affidavits from himself and his ex-wife regarding his role in his daughter's life and his financial support of her, an ex-tract of the Armed Forces Code of the Republic of China (which showed Mr. Chang faced a penalty of five years' incarceration for abandoning his military service in failing to return to Taiwan following his graduation from VMI), and a psychologist's report on his relationship with his daughter Claudia including her recommendation against a prolonged separation of father and daughter.

In March 1994, Mr. Chang filed with the Immigration and Naturalization Service an immigrant petition for alien worker—which sought adjudication of Mr. Chang's entitlement to a preference for permanent resident status as a skilled worker under 8 U.S.C. § 1153(b). Mr. Chang's petition was approved by the INS Eastern Regional Service Center in April 1994. This approval made Mr. Chang eligible for permanent residency—except for waiver of the two-year foreign residency requirement.

On May 24, 1994, the District Director of the INS denied Mr. Chang's application for a waiver. In his written opinion, the District Director said that tax returns requested from Mrs. Chang had not been made available, and that Mr. Chang's tax returns (showing an income of between $9,700 and $16,000 between 1990 and 1993) did not indicate deductions for child support or alimony payments. The District Director intimated that on such an income, Mr. Chang would have been left with very little money on which to live, had he made the child support payments in the amount both Mr. and Mrs. Chang stated he had made in their affidavits. The District Director said that "[t]here is no persuasive evidence that [Mr. Chang] has provided any substantial economic support to either his ex-wife or to his nine year old daughter. No child support deductions appear on his income tax returns." The opinion went on to say that the divorce decree, which was not submitted, would "show custody and child support or other settlement." The District Director added that the major factor weighing against Mr. Chang's waiver application was that he had not returned to Taiwan following his education at VMI, and that Mr. Chang had chosen instead to become "a deserter from the military and a defector from his country." The District Di-

rector said that he denied Mr. Chang's application for waiver based on these reasons.

On September 2, 1994, Mr. Chang moved the District Director to reopen the denial, and offered new documentation in support of his application in the form of Mrs. Chang's tax returns and the couple's divorce papers—the lack of which the District Director had mentioned as part of the basis of his initial denial of Mr. Chang's application back in May. The following day, the District Director granted Mr. Chang's motion to reopen, but again denied his application, repeating his observation that deductions for alimony or child care did not appear—this time on Mrs. Chang's tax returns. He did not mention the divorce decree, which does not spell out terms of any settlement or child support arrangements. Mr. Chang timely appealed the District Director's decision to the Administrative Appeals Unit.

Mr. Chang also moved the immigration judge on October 5th to stay any deportation proceedings during the pendency of his appeal before the AAU. The immigration judge denied that motion on October 11, 1994, and gave Mr. Chang until April 30, 1995 to voluntarily depart from the U.S. or face deportation to the Republic of China. Mr. Chang appealed that ruling to the Board of Immigration Appeals. On April 27, 1995, the BIA dismissed Mr. Chang's appeal and granted him an additional 30 days in which to leave the U.S. voluntarily.

On August 1, 1995, as part of his appeal of the District Director's decision, Mr. Chang's counsel filed a brief with the AAU. On July 17, 1996, the AAU denied Mr. Chang's appeal, stating that there was no evidence that Mr. Chang would be prosecuted for desertion if he returned to Taiwan, ignoring the portion of the Armed Forces Code of the Republic of China that was part of the record at that time.

Meanwhile, Mr. Chang had left the U.S. pursuant to the order of the immigration judge, going first to Honduras, and later to Hong Kong, where in June of 1996 he was arrested, and remains in custody of the authorities there. The government was aware of Mr. Chang's foreign arrest no later than October 28, 1996—as evidenced in a memorandum from Senior Special Agent Robert M. Trent.[1]

On April 18, 1997, the INS mailed two notices to Mr. Chang's address in Northern Virginia.[2] The notices purported to inform Mr. Chang that he had to appear before the INS to discuss his current immigration status on May 5, 1997, at 9:00 a.m., and that he would forfeit his bond if he did not show up. A handwritten notation on the hearing document indicates that Mr. Chang was, not surprisingly, a no-show on May 5th.

On May 18, 1997, Mr. Chang's counsel filed this action with this Court.

**Discussion**

Under Section 212(e) of the Immigration and Naturalization Act, student visa holders must return to their native countries for two years before they are eligible to apply for permanent residence in the United States, unless the Attorney General waives this foreign residency requirement under 8 U.S.C. § 1101(a)(15)(J). Without a waiver of the two-year foreign residency requirement, Mr. Chang had no available defense to deportation. Without this residency requirement, Mr. Chang could have used a defense under 8 U.S.C. § 1254, which requires seven years' presence in the U.S. plus a family hardship. As Mr. Chang had no defense to deportation, he left this country voluntarily.

Any alternate defense Mr. Chang might have had relating to his adjustment of status based on labor certification was similarly foreclosed to him, as deportation proceedings and labor certification proceedings occur independently of the recommendation of waiver process Mr. Chang sought under 8 U.S.C. § 1101(a)(15)(J).

---

1. The complete text of the memorandum reads: "The subject of this file **CHANG, WEI JAI** [sic] was arrested in Hong Kong June 1996 with the OIC/INS Tegucigalpa, Jerry Stuchiner. Therefore, he has self-deported. Subject remains in Hong Kong custody at this writing."

2. Despite the fact that the INS had notice Mr. Chang was no longer residing there, at least as of June 1996.

The government bases its motion for dismissal or summary judgment on three main premises: one, that this Court lacks jurisdiction under the APA because the INS' decision is committed to agency discretion by law; two, that Mr. Chang abandoned his petition for judicial review by leaving the country before this action was filed; and three, that the INS' denial of Mr. Chang's application for a waiver withstands judicial review under the APA based on the administrative record. The Court will address each of these premises in turn.

**Jurisdiction**

■ For this Court's jurisdiction, Mr. Chang invokes the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the Administrative Procedure Act (APA), 5 U.S.C. § 701, et seq., most specifically, § 706(a)(2)(A).[3] The Declaratory Judgment Act does not provide an independent basis of jurisdiction; it merely provides an additional remedy where the court has an otherwise valid jurisdictional basis to consider a case. *Karmali v. INS*, 707 F.2d 408 (9th Cir.1983).

■ The findings underlying the INS' decision . . . must be supported by substantial evidence. *Patel v. INS*, 811 F.2d 377, 382 & n. 11 (7th Cir.1987). Substantial evidence is evidence that a reasonable mind would find adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

■ Under the APA, a person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" is entitled to judicial review. 5 U.S.C. § 702. Although there is a strong presumption of reviewability under the APA, *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967), agency action is deemed to be committed to agency discretion when "statutes are drawn in such broad

terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971) (internal quotations omitted), or there is "no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). As the Supreme Court has stated, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action." *Id.*

■ However, under the APA, the legality of an agency action is presumptively subject to judicial review unless a statute "preclude[s] judicial review," 5 U.S.C. § 701(a)(1), the "action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), or the action is not final. 5 U.S.C. § 704. *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1223–25 (D.C.Cir.1993) (A statute directing the Secretary of Health and Human Services to provide "exceptions" to the prospective amounts of Medicare payments to hospitals "as the Secretary deems appropriate" did not commit to agency discretion by law the decision whether to provide exceptions.); *National Treasury Employees Union v. Horner*, 854 F.2d 490, 495 (D.C.Cir.1988) (A statutory scheme allowing the Office of Personnel Management to depart from competitive civil service only when "necessary" for "conditions of good administration" provided manageable standards for reviewing agency action.). *Allen v. Card*, 799 F.Supp. 158 (D.D.C.1992) (waiver determinations reviewable under an abuse of discretion standard), rev'd on other grounds sub nom. *Detweiler v. Pena*, 38 F.3d 591 (D.C.Cir.1994)

■ The INA provides that courts of appeals have exclusive jurisdiction over "all

---

**3.** Section 706 of the Administrative Procedure Act provides that: To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. . . .

final orders of deportation" made pursuant to deportation hearings. 8 U.S.C. § 1105(a). The INA also states, however, that federal district courts have "jurisdiction over all causes, civil and criminal, arising under any of the provisions of this subchapter." 8 U.S.C. § 1329. The delineation between the jurisdiction of these two segments of the judicial branch in deportation matters causes some confusion, which is not squarely addressed by the parties to this case. The exclusive jurisdiction of the courts of appeals includes "any attack upon the proceeding in which a deportation order was entered or upon any matter 'intimately and immediately associated' with the final order or 'governed by the regulations applicable to the deportation proceeding itself, and ... ordinarily presented to the special inquiry officer who entered the deportation order.'" *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1032 (5th Cir.1982) (quoting *Cheng Fan Kwok v. INS,* 392 U.S. 206, 217, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968)). Decisions that are not tied to the final deportation order are reviewable by the district court. *Id.*

■ Here, Mr. Chang does not request review of a final order of deportation. He challenges a preliminary decision by the District Director to deny him a waiver of the two year residency requirement—the first step in a three-step waiver process that would exempt him from having to leave the country for two years in order to seek to reenter it. Mr. Chang claims that the District Director abused his discretion in his factual and legal findings at this initial step, and that this abuse made other avenues of redress impossible for Mr. Chang.

The Eleventh Circuit explains that "[f]ederal courts ... have jurisdiction to review allegations that agency officials have acted outside their statutory authority." *Gottesman v. Fischer,* 922 F.Supp. 605, 610 (N.D.Ga.1996). Citing *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555 (11th Cir. 1989), aff'd, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); see also *Jean v. Nelson,* 727 F.2d 957, 966 n. 11 (11th Cir.1984), aff'd, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (explaining that judicial review is not precluded in the immigration area and that federal courts have jurisdiction to determine if an agency complies with its statutory and regulatory limitations).

■ In order to reach his decision, the District Director must weigh the equities first outlined in the Bureau of Immigration Appeals' widely-adopted opinion *In re Matter of Marin,* 16 I & N Dec. 581 (Aug. 4, 1978), which requires the balancing of "adverse factors of record evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf" to determine whether granting a waiver from the two-year residency requirement is in the best interest of the U.S. With this in mind, the Court finds that it has jurisdiction to review Mr. Chang's claims, and that there is some basis on which the Court may rest its determination.

### Abandonment of Claim

■ The Government claims that Mr. Chang abandoned his claims when he left the U.S. Mr. Chang contends that without a recommendation for a waiver, his only defense to deportation was to ask the BIA to wait for the AAU opinion regarding the decision on the waiver recommendation—a defense he admits was foreclosed by his departure. But Mr. Chang maintains that his need for the waiver is not moot, because if the waiver were granted, he could apply to the U.S. Consulate for a visa as a permanent resident and effect an immediate return to this country. Mr. Chang further states he needs the waiver to avoid returning to Taiwan for the duration of the two years foreign residency requirement—and possibly for five years' imprisonment, or an· indefinite period if, as a convicted felon in Taiwan, he is denied travel privileges either temporarily or permanently.

While Mr. Chang's departure from the U.S. was termed "voluntary," the term is not in true keeping with its commonly-accepted meaning. Mr. Chang complied with an immigration judge's order that he depart of his own initiative. Mr. Chang did this in all likelihood knowing that his failure to comply (to overstay his "voluntary" departure date) would result in some combination of his being forcibly deported, jailed, and/or barred from

reentering the U.S. for a period of ten years. So to construe Mr. Chang's departure as truly voluntary, and cast him in the position of having knowingly and freely abandoned any recourse he might have, seems not just fundamentally unfair, but intrinsically wrong. It puts him (and others similarly situated) in the position of having a valid claim that would then perpetually evade judicial review. Mr. Chang agrees that his departure ended his ability to travel through the administrative rehearing process—which ground to its inevitable conclusion without him—but his allegation that the flaw *ab initio* in the process was impermissible and fatally flawed its outcome allows Mr. Chang to invoke the APA and this Court's review.

**Administrative Record**

The government claims that the District Director's decision withstands review based on the administrative record. Mr. Chang states the decision was an abuse of discretion.

■ "Since decision of immigration judge was fully supported by reasonable, substantial and probative evidence, administrative judge's decision was binding on reviewing court, and district court was not called upon to substitute its fact-findings for those of administrative agency but to insure that administration decision was not arbitrary, capricious, or contrary to law and was reached with proper regard for procedural requirements." *Alvarez v. District Director of the INS*, 539 F.2d 1220 (9th Cir.1976), certiorari denied, 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 597 (1976). While findings of fact are committed to the District Director, this Court may review the District Director's decision if it is arbitrary, capricious, or contrary to established law. In this case, the District Director's findings are precisely that.

■ In his written opinion of May 24, 1994, the District Director chastised Mr. Chang for not putting into evidence his ex-wife's tax records. When Mr. Chang submitted those returns in his motion to reopen on September 2, they were airily dismissed as not showing alimony or child care deductions. The District Director also stated that if Mr. Chang were paying child support, then the payments would be indicated as deductions on his federal income tax returns—the "proof" the District Director required for Mr. Chang to show he is indeed paying for at least part of Claudia's care and upbringing. He also upbraids Mr. Chang for failing to produce Mrs. Chang's parents' federal tax forms—as Claudia resided with them for a time. (It was later found that neither of Claudia's maternal grandparents had worked during her lifetime, and that they were unable to produce back tax returns because they were not required to file them and had not done so.) The District Director emphasized that there was no "persuasive evidence" that Mr. Chang made any support payments for his daughter, despite affidavits from both parents that Mr. Chang gave approximately $500 per month to Mrs. Chang, carried Claudia on his medical insurance, and had helped his ex-wife pay for her car insurance. Upon reopening the matter and accepting the submission of the Changs' divorce decree and Mrs. Chang's tax returns, the District Director found her income—which ranged from just over $6,000 to almost $18,000—to be adequate for her and her daughter (while Mr. Chang's similar income range had been deemed inadequate to support his contention that he paid $500 a month child support, even when coupled with a sworn statement that he did so from his former spouse). And despite the fact that his own country had given amnesty to wartime deserters and draft evaders four years after the end of the Vietnam War (Executive Order 11967 and Proclamation 4483, both Jan. 21, 1977), the District Director held that Mr. Chang's desertion of his non-wartime cadet post in Taiwan warranted his being returned to face a penalty of five years' imprisonment. No evidence was offered to show any similar amnesty program had been instituted in Taiwan.

■ The District Director committed an error of law when he construed against Mr. Chang the fact that he had not claimed child support deductions on his federal tax forms. Under the Internal Revenue Code 26 U.S.C. § 1, et seq., only alimony may be claimed as deductible to the payor and taxable to the payee, 26 U.S.C. § 215. To file a deduction based on child support payments would be

illegal, 26 U.S.C. § 71, and would have made Mr. Chang a tax cheat.

■ Further, it is clear error to hold against someone the fact that their divorce decree does not detail the amount and duration of child support obligations. Many family law attorneys (at least here in the District of Columbia) advise their clients against having the specific terms of their property settlements and separation and custody agreements incorporated into their decrees of divorce; for at least two reasons. One, any agreements incorporated into the decree become a matter of public record, which many individuals do not deem desirable. Two, agreements that are not incorporated into a divorce decree do not then become a matter of contempt of court if they are not followed; they are actionable only as breach of contract matters. In some divorces, such measures are felt to be appropriate by one or both parties, and their counsel.

■ Although an immigration judge's credibility findings are granted substantial deference by reviewing courts, *Sarvia–Quintanilla v. INS,* 767 F.2d 1387, 1395 (9th Cir.1985), a trier of fact who rejects a witness's positive testimony because in his or her judgment it lacks credibility should "offer 'a specific, cogent reason for [his] disbelief.'" *Damaize–Job v. INS,* 787 F.2d 1332, 1338 (9th Cir.1986) (quoting *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981)). The specific, cogent reason the District Director offers in Mr. Chang's case is that Mr. Chang has failed to comport with the director's erroneous approach to federal tax law and what he expected to see on an income tax return. So under *Matter of Marin,* while the District Director has complied with the need to articulate his reasons for his view of Mr. Chang's evidence, because the director so fundamentally errs in his application of the law, his conclusion is fatally flawed. Further, *Matter of Marin* requires the balancing of undesirability with the "social and humane considerations" presented on Mr. Chang's behalf. There is no evidence in either of the District Director's opinions that such balancing was done.

**Conclusion**

For the reasons set out above, the Court finds that Defendant's motion should be denied, and this matter should be remanded to the District Director for reconsideration in light of this Court's findings.

**ORDER**

Upon consideration of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, Plaintiff's opposition thereto and Cross–Motion for Summary Judgment, and Defendant's reply and response thereto; the entire record in this case; and for the reasons set out in the attached Memorandum, it is by the Court this 17th day of December, 1997

**ORDERED** that Defendant's motion be DENIED; and it is further

**ORDERED** that this matter be remanded to the District Director for proceedings consistent with this Memorandum and Order.